761 A.2d 56

David Reginald HERON

v.

Veronica STRADER, et al.

No. 13, Sept. Term, 2000.

Court of Appeals of Maryland.

Oct. 17, 2000.

Philip B. Zipin (Stephani L. Hillman of Gagliardo & Zipin, on brief), Silver Spring, for petitioner.

Marc E. Curry, Associate County Atty. (Sean D. Wallace, County Atty., and John A. Bielec, Deputy County Atty., on brief), Upper Marlboro, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

Petitioner, David Reginald Heron, filed suit against Prince George's County, Maryland under the Local Government Tort Claims Act (hereinafter "LGTCA"), Maryland Code (1987, 1998 Repl.Vol., 2000 Supp.) § 5–301 of the Courts and Judicial

Proceedings Article [1] for malicious prosecution, false arrest, and false imprisonment. The Circuit Court for Prince George's County dismissed all of the claims on the ground that the Notice of Claim was untimely and that there was no good cause that would excuse the late filing. The Court of Special Appeals, in an unreported opinion, affirmed the judgment. We shall hold that Petitioner's Notice of Claim was timely as to his malicious prosecution claim, but that it was not timely as to his claims of false arrest and imprisonment and that he lacked good cause for late filing. Accordingly, we affirm in part and reverse in part.

## I.

On August 24, 1997, Petitioner was arrested and charged with resisting arrest, obstructing the police in the performance of their duties, and disorderly conduct. On March 3, 1998, he was acquitted of all charges. On April 30, 1998, pursuant to the LGTCA, Petitioner sent a Notice of Claim to Prince George's County notifying the county of his intention to file a civil complaint against Respondents, the arresting officers. In the Notice, Petitioner alleged that he had been injured when Respondents "assaulted and battered him, falsely imprisoned him, violated his civil rights, and committed numerous other wrongs against him." He identified the time and place of injury as "[o]n or about August 24, 1997" at the Landover Metro Station.

On June 1, 1998, Petitioner filed a complaint in the Circuit Court for Prince George's County alleging multiple claims against Respondents, Corporals Veronica Strader and Todd Nalley of the Prince George's County Police Department, in their individual and official capacities. The Complaint included the claims of false imprisonment, false arrest, and malicious prosecution.[2]

---

1. Hereinafter, unless otherwise indicated, all statutory references shall be to Maryland Code (1987, 1998 Repl.Vol., 2000 Supp.) Courts and Judicial Proceedings Article.

2. Petitioner's Complaint also included claims of assault, battery, and intentional infliction of emotional distress. He concedes that his Notice

On August 18, 1998, Respondent Strader filed a Motion to Dismiss asserting that the Complaint failed to state a claim upon which relief could be granted and that Petitioner had failed to provide the timely written notice required by § 5–304(a) of the LGTCA. On September 2, 1998, Petitioner filed a Response to the Motion to Dismiss asserting that his failure to provide the County with the required notice was excusable under § 5–304(c) because he had been working on his criminal defense to the charges against him arising out of the events of August 24, 1997 and that Respondents had not proven prejudice from the delay. On January 27, 1999, the court dismissed the case on the grounds that the notice was untimely, stating that Petitioner was required to exercise "reasonable ordinary care" and that the pendency of a criminal case did not constitute good cause for his failure to provide notice within the statutory period of time.

Petitioner noted a timely appeal to the Court of Special Appeals. The intermediate appellate court, in an unreported opinion, affirmed the trial court, holding that the notice period for Petitioner's claims of false arrest, false imprisonment, and malicious prosecution began to run on the date of his arrest and that the trial court did not abuse its discretion in finding that no good cause existed to excuse the notice requirements of the LGTCA. This Court granted certiorari to determine whether the trial court erred in dismissing Petitioner's claims of false arrest, false imprisonment, and malicious prosecution.

## II. Timeliness

In order to assess the timeliness of Petitioner's Notice of Claim under the LGTCA, it is necessary, first, to determine the time of his alleged injury for each of the appealed claims. Petitioner contends that his injury in this case occurred when his causes of action accrued for malicious prosecution, false arrest, and false imprisonment, which he asserts was after his acquittal. Section 5–304 of the LGTCA provides that "an

---

of Claim for those counts was not timely filed. He presented no federal or state constitutional claims.

action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.... The notice shall be in writing and shall state the time, place, and cause of the injury." § 5–304(a)–(b).

Although this Court has not previously interpreted the definition of an "injury" under the LGTCA, we have considered the question of when an injury arises in the context of the Maryland Tort Claims Act ("MTCA"), Maryland Code (1984, 1999 Repl.Vol., 2000 Supp.) § 12–106 of the State Government Article. The MTCA provides: "A claimant may not institute an action under this subtitle unless ... the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim ...." § 12–106(b). In *Haupt v. State,* 340 Md. 462, 667 A.2d 179 (1995), we considered the question of when an injury arises pursuant to the notice requirement of the MTCA for third party claims.[3] We held that notice had to be given when the "legally operative facts" permitting the filing of the claim came into existence. *Haupt,* 340 Md. at 474, 667 A.2d at 185. We concluded that the 180–day clock began to run at the moment that the plaintiff was able to bring her claim. *See id.* at 477, 667 A.2d at 186. Similarly, in *Lopez v. Maryland State Highway Admin.,* 327 Md. 486, 610 A.2d 778 (1992), we considered the question of when an injury had occurred under the MTCA for the purposes of a wrongful death suit by a child that had not yet been born at the time of the accident. In *Lopez,* we held that the injury that the child had suffered, for the purposes of the statute, could not have occurred until he "became a statutory claimant," which we equated with the time at which "his cause of action arose." *Id.* at 491, 610 A.2d at 780. We

---

**3.** MTCA § 12–106(b) states, in relevant part, that: "[a] claimant may not institute an action under this subtitle unless: (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the *injury* to person or property that is the basis of the claim." § 12–106(b)(1) (emphasis added).

now adopt the same interpretation of the time of the injury for the purposes of the notice requirement of the LGTCA.

■ Petitioner's injury, therefore, occurred, pursuant to § 5–304, when his causes of action arose, i.e., when the legally operative facts permitting the filing of his claims came into existence. In order to determine when Petitioner's causes of actions arose, we must examine the elements of the cause of action, since, under this Court's precedents, a cause of action is said to have arisen " 'when facts exist to support each element.' " *Owens–Illinois v. Armstrong*, 326 Md. 107, 121, 604 A.2d 47, 54 (1992) (quoting *Owens–Illinois v. Armstrong*, 87 Md.App. 699, 724–25, 591 A.2d 544, 556 (1991)); *Owens Corning v. Bauman*, 125 Md.App. 454, 726 A.2d 745 (1999) (citing *Owens–Illinois*, 326 Md. at 121, 604 A.2d at 54).

■ The elements of malicious prosecution are: 1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff. *See DiPino v. Davis*, 354 Md. 18, 59, 729 A.2d 354, 373 (1999); *Montgomery Ward v. Wilson*, 339 Md. 701, 714, 664 A.2d 916, 922 (1995).

■ The elements of false arrest and false imprisonment are identical. Those elements are: 1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification. *See Manikhi v. Mass Transit Admin.*, 360 Md. 333, 364, 758 A.2d 95, 111–12, 2000 Md. LEXIS 517, at *44 (2000); *Montgomery Ward*, 339 Md. at 721, 664 A.2d at 925–26. Petitioner argues that the third element, legal justification, does not come into existence until after acquittal. He is wrong. The test of legal justification, in the context of false arrest and false imprisonment, is " 'judged by the principles applicable to the law of arrest.' " *Montgomery Ward*, 339 Md. at 721, 664 A.2d at 926 (quoting *Ashton v. Brown*, 339 Md. 70, 120, 660 A.2d 447, 472 (1995)). Therefore, "where the basis of a false imprisonment action is an arrest by a police officer, the liability of the police officer for false imprisonment will ordinarily depend upon whether or not the officer acted within his

legal authority to arrest." *Montgomery Ward,* 339 Md. at 721, 664 A.2d at 926.

■ Petitioner's causes of action for false arrest and false imprisonment arose, and his injuries for the purposes of the LGTCA therefore occurred, on August 24, 1997, the date that he was arrested and detained by the police. The facts alleged to support each element of his claim were in existence at that time. Therefore, his Notice of Claim, with respect to his claims of false arrest and false imprisonment, was not timely.

■ Malicious prosecution, however, is a different case. The tort of malicious prosecution includes not only the initiation of criminal proceedings against the plaintiff, but also the termination of those proceedings in the defendant's favor as a necessary element of the cause of action. Petitioner was lacking the facts to support that element until his acquittal on March 3, 1998. Therefore, his Notice of Claim, with respect to his claims of malicious prosecution, was timely, and it was error for the trial court to dismiss those counts of the Complaint.

This holding is in accord with the law of other jurisdictions. While the public entity tort claim statutes of many other states specify that notice must be given within a designated period of time after the claimant's cause of action has "arisen" or "accrued," these precedents are nonetheless instructive as we interpret "injury" for the purposes of the LGTCA to be equivalent to the time when the plaintiff's cause of action has arisen.

The California District Court of Appeal, in interpreting the California Tort Claims Act, Cal. Gov't Code § 715 (repealed 1965) (current version at Cal. Gov't Code § 901 (West 1995)), held that a cause of action for false arrest or imprisonment against a local public entity accrues[4] at the termination of imprisonment and not at the time of the termination of the criminal proceedings underlying the arrest. *See Collins v.*

---

**4.** The provision of the California Tort Claims Act governing the time limits for presentation of claims specifically refers to the "accrual of the cause of action," Cal. Gov't Code § 911.2 (West 1995), *as opposed to the*

*County of Los Angeles*, 241 Cal.App.2d 451, 50 Cal.Rptr. 586, 588 (1966). In *Collins,* the Appellants had filed a claim for damages for false arrest and false imprisonment by two deputy sheriffs against Los Angeles County approximately six months after they alleged that they had been illegally detained. The applicable California statute then in effect required that a "claim relating to a cause of action ... for physical injury to the person ... shall be presented ... not later than the one hundredth day after the accrual of the cause of action." CAL. GOV'T CODE § 715 (repealed 1965) (current version at CAL. GOV'T CODE § 911.2 (West 1995)). The Appellants argued that their notice was timely because they did not discover that they had been falsely arrested and imprisoned until the end of the criminal trial and that, therefore, their cause of action had not accrued until that time. The court in *Collins* rejected that argument, stating: "inasmuch as the only allegation as to imprisonment in the ... complaint is that plaintiffs were imprisoned and detained of their liberty on [a single day], and there is no allegation of any imprisonment after that date, ... the cause of action herein accrued on [that date], and the 100 days started to run from that date...." *Collins,* 50 Cal.Rptr. at 589. The court specifically rejected the Appellants' analogy to malicious prosecution, stating: "The actions are not similar because a necessary element of an action for malicious prosecution is a judicial proceeding favorably terminated. In a false imprisonment case there is no such requirement." *Id.* at 591.

Similarly, the District of Columbia Court of Appeals, in interpreting D.C.CODE ANN. § 12–309 (1981), which requires that a claimant give written notice "within six months after the injury or damage was sustained" in order to maintain a tort suit against the District of Columbia, affirmed the trial court's finding that the plaintiff's written notice to the District of his potential malicious prosecution claim, dated less than two months after his acquittal, was timely, but that the same

---

Maryland LGTCA, which refers to the time of the "injury." Maryland Code (1987, 1998 Repl.Vol., 2000 Supp.) § 5–304(a) of the Courts and Judicial Proceedings Article.

notice was not timely with respect to his claims of false arrest, assault and battery, and negligence arising out of the same arrest. *See Allen v. District of Columbia,* 533 A.2d 1259, 1263 (1987).[5]

The Indiana Court of Appeals, in interpreting the Indiana Tort Claims Act, IND.CODE § 34–4–16.5–7 (West 1999) (repealed 1998), which required that a notice of claim must be filed with a political subdivision within 180 days after a "loss" has occurred, also held that claims of false arrest and imprisonment accrue at the time of arrest, charging, and release from custody, but that a claim for malicious prosecution does not accrue until acquittal. *See Livingston v. Consolidated City of Indianapolis,* 398 N.E.2d 1302 (1979).[6]

The Superior Court of New Jersey, in interpreting the New Jersey Tort Claims Act, N.J. STAT. ANN. § 59:1–1 (1992), held that the accrual date [7] for a cause of action for false arrest was the date of the arrest because termination of criminal proceedings is not an element of the claim. *See Pisano v. City of*

---

**5.** Rejecting the application of the "discovery rule" to the notice requirement of D.C.CODE ANN § 12–309 (1981) in suits brought against the District of Columbia, the D.C. Court of Appeals held that the "point in time when a cause of action accrues is immaterial," concluding that the limitation " 'within six months after the injury or damage was sustained' ... begins to run from the moment the plaintiff sustains the injury...." *District of Columbia v. Dunmore,* 662 A.2d 1356, 1359 (1995). The discovery rule, operative in the District of Columbia, tolls the accrual of a cause of action, for the purposes of the statute of limitations, until the plaintiff knows or should have known of the existence of the injury, its cause in fact, and some evidence of wrongdoing. *See Dunmore,* 662 A.2d at 1359; *see also District of Columbia v. Ross,* 697 A.2d 14 (D.C.1997); *DeKine v. District of Columbia,* 422 A.2d 981, 985 (D.C.1980).

**6.** The court in *Livingston* nonetheless affirmed the trial court's dismissal of all of the appellant's claims on the basis of the specific immunity provision of the Indiana Tort Claims Act, IND.CODE § 34–4–16.5–3 (West 1999) (repealed 1998), which granted immunity to all governmental entities or employees for "the initiation of a judicial or administrative proceeding." § 34–4–16.5–3(5).

**7.** The time limitations on presentation of claims under the New Jersey Tort Claims Act refer specifically to the "accrual of the cause of action." N.J.CODE ANN. § 59:8–8 (1992).

*Union City,* 198 N.J.Super. 588, 487 A.2d 1296, 1299 (Law Div.1984). The court also distinguished false arrest from malicious prosecution, explaining:

It is well established that a cause of action for malicious prosecution does not arise until the criminal proceeding has terminated in plaintiff's favor. That is a condition precedent to the institution of the action. Such a requirement that the criminal proceeding has terminated in plaintiff's favor is not a prerequisite for institution of an action for false arrest, as the form of action is based upon an illegal arrest and no matter *ex post facto* can legalize an act which was illegal at the time it was done.

*Id.* (internal citations omitted). The United States District Court, in interpreting both the statute of limitations and the Notice of Claim provisions of the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:8–8(a)–(b) (1992), held that, while most of the plaintiff's state tort causes of action, including intentional infliction of emotional distress and abuse of process, accrued at the time of her arrest,[8] her malicious prosecution claim accrued when the criminal proceedings against her terminated favorably. *See Michaels v. New Jersey,* 955 F.Supp. 315 (D.N.J.1996).

In interpreting the Notice of Claim provision of New York's municipal tort liability statute, New York Gen. Mun. Law § 50 (McKinney 1999), New York courts have found that claims of false arrest and false imprisonment arose[9] on the date on which the plaintiff was released from custody, but that causes of action for malicious prosecution did not accrue until the underlying criminal charges were dismissed. *See Jastrzebski*

---

8. Strictly speaking, because New Jersey employs a discovery rule, the plaintiff's state law causes of action, except for malicious prosecution, accrued when she should have discovered, by due diligence, that the elements of the claims existed. The court concluded, however, that that occurred "at or about the time of plaintiff's arrest." *Michaels v. New Jersey,* 955 F.Supp. 315, 326 (D.N.J.1996).

9. The New York statute requires that a Notice of Claim be served "within ninety days after the claim arises." New York Gen. Mun. Law § 50–e (McKinney 1999).

*v. New York*, 423 F.Supp. 669 (S.D.N.Y.1976); *Ragland v. New York City Hous. Auth.*, 201 A.D.2d 7, 613 N.Y.S.2d 937, 939 (1994); *McElveen v. Police Dep't*, 70 A.D.2d 858, 418 N.Y.S.2d 49 (1979); *Peresluha v. New York*, 60 A.D.2d 226, 400 N.Y.S.2d 818 (1977); *accord Malone v. McHugh*, 797 F.Supp. 154, 155–56 (E.D.N.Y.1991); *Leung v. New York*, 216 A.D.2d 10, 627 N.Y.S.2d 369 (1995); *Bennett v. New York*, 204 A.D.2d 587, 612 N.Y.S.2d 201 (1994); *Collins v. McMillan*, 102 A.D.2d 860, 477 N.Y.S.2d 49 (1984); *Kelly v. Kane*, 98 A.D.2d 861, 470 N.Y.S.2d 816 (1983); *Hines v. Buffalo*, 79 A.D.2d 218, 436 N.Y.S.2d 512 (1981); *Boose v. Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740 (1979); *Allee v. New York*, 42 A.D.2d 899, 347 N.Y.S.2d 708 (1973); *cf. Ciferri v. State*, 118 A.D.2d 676, 500 N.Y.S.2d 28 (1986) (holding that the statute of limitations for a malicious prosecution action against a state employee begins to run upon dismissal of the charges by the trial court).

The United States Court of Appeals for the Third Circuit, in interpreting the Virgin Islands Tort Claims Act, V.I.CODE ANN. tit. 33, § 3401 (2000), which requires that written notice be presented within six months "after the act or omission constituting the basis of the claim," § 3402, held that the accrual date for claims of false imprisonment and arrest was the day of the arrest, but that the accrual date for malicious prosecution was dismissal of the criminal proceedings. *See Deary v. Three Un–Named Police Officers*, 746 F.2d 185 (3 rd Cir.1984).

This approach to notice of tort claims is consistent with the general jurisprudence regarding the accrual of statutes of limitation for claims of false arrest, false imprisonment, and malicious prosecution. In determining the statute of limitations for claims of unlawful arrest and false imprisonment, the Oklahoma Supreme Court, in the oft-cited case *Belflower v. Blackshere*, 281 P.2d 423 (1955), held that the statute of limitations accrued at the release from imprisonment, not at the termination of the proceedings by which the arrest occurred. Several other states have subsequently followed this approach. *See Kirwan v. State*, 31 Conn.Supp. 46, 320 A.2d

837 (1974); *Mound Bayou v. Johnson*, 562 So.2d 1212, 1217 (Miss.1990) ("Thompson's [sic] action for false arrest accrued the day it occurred.... His action for malicious prosecution did not accrue until ... the date of the two judgments ... dismissing Mound Bayou's ... prosecutions."); *O'Fallon v. City of Burlington*, 427 N.W.2d 809, 811 (N.D.1988) ("False imprisonment is considered a continuing tort which commences at the time of the false arrest and continues until the unlawful detention ceases."); *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153 (Tex.Civ.App.1980) (holding that a cause of action for false imprisonment accrues for the purpose of the statute of limitations when the unlawful detention ends). Similarly, the United States Court of Appeals for the Third Circuit, in analyzing the date of accrual of a Section 1983 cause of action for malicious prosecution and false arrest, has held that, under federal law, since favorable termination was a necessary element of malicious prosecution claims, they did not accrue until the underlying criminal proceedings were terminated, but that false arrest claims accrued on the date of arrest. *See Rose v. Bartle*, 871 F.2d 331, 348–51 (3 rd Cir.1989).

## II. Waiver for Good Cause

 Section 5–304 of the LGTCA provides for a waiver of the notice requirement: "Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." § 5–304(c). The question of whether good cause for waiver exists is clearly within the discretion of the trial judge. *See Downey v. Collins*, 866 F.Supp. 887, 889 n. 7 (D.Md.1994) (holding that the failure to discover the injury until witnesses were found and the failure of the county to respond to requests for materials were not sufficient to constitute good cause under § 5–304(c)); *Madore v. Baltimore County*, 34 Md.App. 340, 344, 367 A.2d 54, 57 (1976) [10]; *cf. Lemma v. Off Track Betting Corp.*, 272 A.D.2d 669, 707 N.Y.S.2d 276 (2000).

---

**10.** *Madore* dealt with the application of the precursor to the current LGTCA, Maryland Code (1957, 1972 Repl.Vol.) Art. 57, § 18(b) (re-

Therefore, the trial judge's findings will not be disturbed absent a showing of abuse of discretion. *See Westfarm Assoc. v. Washington Suburban Sanitary Comm'n,* 66 F.3d 669, 676 (4 th Cir.1995); *Madore,* 34 Md.App. at 344, 367 A.2d at 56–57; *cf. Viles v. State,* 66 Cal.2d 24, 56 Cal.Rptr. 666, 423 P.2d 818, 821 (1967); *Lamb v. Global Landfill Reclaiming,* 111 N.J. 134, 543 A.2d 443, 449 (1988); *Bowman v. Capital Dist. Transp. Auth.,* 244 A.D.2d 638, 663 N.Y.S.2d 727 (1997). The test for whether good cause exists pursuant to § 5–304(c) is "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Westfarm,* 66 F.3d at 676–77 (citations omitted). *See Downey,* 866 F.Supp. at 889–90; *Madore,* 34 Md.App. at 345, 367 A.2d at 57; *cf. Lee v. Houston Fire & Cas. Ins. Co.,* 530 S.W.2d 294 (Tex.1975).

Petitioner argues that concentrating on his criminal defense constitutes good cause for late filing under § 5–304(c). The trial court specifically rejected this argument. Dismissing the case, the court found that the pendency of a criminal case was not sufficient to constitute good cause for late filing. We hold that it was not an abuse of discretion for the trial judge to so find. Section 5–304 requires simply that a written notice of the time, place, and cause of the injury be sent to the county attorney within 180 days after the alleged injury. *See* § 5–304(a)(b). It does not require the institution or prosecution of the civil action. We agree with the trial judge's conclusion that an ordinarily prudent person, in Petitioner's circumstances, would have been able, through the exercise of reasonable diligence, to file such a Notice of Claim.

---

pealed 1973), which stated: "Notwithstanding the provisions ... above the court may, upon motion and for good cause shown, entertain the suit [against any municipal corporation, county, or Baltimore City] even though the required notice was not given, unless provided further the defendant can affirmatively show that its defense has been prejudiced thereby." *See Downey v. Collins,* 866 F.Supp. 887, 889 n. 5 (D.Md. 1994); *Madore v. Baltimore County,* 34 Md.App. 340, 367 A.2d 54 (1976).

Several other jurisdictions have sought to define good cause for late filing under public tort claims acts. While courts generally consider a combination of factors, circumstances that have been found to constitute good cause fit into several broad categories: excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard),[11] *see, e.g., Viles,* 56 Cal.Rptr. 666, 423 P.2d at 821–22; *Black v. Los Angeles County,* 12 Cal.App.3d 670, 91 Cal.Rptr. 104, 107–08 (1970); *Kleinke v. Ocean City,* 147 N.J.Super. 575, 371 A.2d 785 (App.Div.1977); serious physical or mental injury and/or location out-of-state, *see, e.g., Silva v. New York,* 246 A.D.2d 465, 668 N.Y.S.2d 189 (1998);[12] *Butler v. Ramapo,* 242 A.D.2d 570, 662 N.Y.S.2d 93 (1997); *Hilda B. v. Housing Auth.,* 224 A.D.2d 304, 638 N.Y.S.2d 36 (1996); *Lamb,* 543 A.2d at 451; *S.E.W. Friel Co. v. New Jersey Turnpike Auth.,* 73 N.J. 107, 373 A.2d 364 (1977); *Kleinke,* 371 A.2d at 788; the inability to retain counsel in cases involving complex litigation, *see, e.g., Torres v. Jersey City Med. Ctr.,* 140 N.J.Super. 323, 356 A.2d 75 (Law Div.1976); and ignorance of the statutory notice requirement,[13] *see, e.g., Bell v. Camden County,* 147 N.J.Super. 139, 370 A.2d 886 (App.Div.1977); *Keller v. Somerset County,* 137 N.J.Super. 1, 347 A.2d 529 (App.Div.1975). No other jurisdiction has recognized the pendency of criminal proceedings as good cause. Moreover, the excuse is unlike

---

**11.** Many states' statutes specifically contain an exception for excusable mistakes. *See, e.g.,* CAL. GOV'T CODE § 946.6(c) (West 1995) ("The court shall relieve the petitioner from [notice requirements] if the court finds that [notice] was made within a reasonable time ... and ... [t]he failure to present the claim was through mistake, inadvertence, surprise or excusable neglect unless the public entity establishes that it would be prejudiced....").

**12.** The New York statute specifically includes mental or physical incapacity as a factor for the court to consider in determining whether to grant leave to serve a late Notice of Claim. *See* N.Y. GEN. MUN. LAW § 50–e(5).

**13.** The Court of Special Appeals has specifically rejected ignorance of the law requiring notice as good cause. *See Williams v. Montgomery County,* 123 Md.App. 119, 716 A.2d 1100 (1998).

any of these widely recognized exceptions to strict notice requirements.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF DISMISSAL OF PETITIONER'S CLAIMS OF FALSE ARREST AND FALSE IMPRISONMENT, REVERSE THE JUDGMENT OF DISMISSAL OF PETITIONER'S CLAIMS FOR MALICIOUS PROSECUTION, AND REMAND THE CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID TWO-THIRDS BY RESPONDENTS AND ONE-THIRD BY PETITIONER.*

CATHELL, Judge, dissenting.

I respectfully dissent. The notice requirements of the Local Government Tort Claims Act (LGTCA), and the notice requirements of the applicable predecessor acts, have always been considered by this Court to constitute a condition precedent to the subsequent filing of a cause of action against an applicable local government entity. It is not merely a waiver of immunity or a statute of limitations that is based upon the accrual of an action. We have always held that its purpose was (is) to afford to local government an opportunity to promptly investigate claims while the incidents, details and the evidence are fresh and available. Even in cases in which local governments enjoy no immunity, the notice requirement exists. In order to sue a local government in tort, even in automobile accidents where immunity has been waived, notice must be given.

Today the majority abandons those concepts, and, in essence, holds that a notice of a claim for unliquidated damages against a local government is not required to be made until all the elements of a cause of action have come into being and, by

logical extension, cannot properly be filed until a cause of action (as opposed to a claim) fully exists. It has never been my understanding that a cause of action must conclusively exist, in order for the obligation of a notice of a claim or potential claim to be required.[1]

Moreover, the majority today equates the terms "claim" or "injury" with the term "cause of action." That simply has not, heretofore, been the law in this State, and should not now be made to be the law of this State. There is, I would respectfully suggest, a substantial difference between a claim and a cause of action. The LGTCA does not require that the notice identify the exact cause of action, or causes of action, arising out of a claim generated by an incident. Maryland Code (1973, 1998 Repl.Vol., 2000 Cum.Supp.), section 5–304(b)(3) of the Courts and Judicial Proceedings Article provides: "The notice shall be in writing and shall state the time, place, and cause of the injury." Nowhere in the statute is it required that the notice identify the exact causes of action that might arise from the claim or claims. Under the majority's reasoning, in order to give notice of a claim within 180 days,[2] the cause of action would have to be specifically identified and noted in the notice itself. Otherwise, the notice might be defective.

This might cause severe problems for potential litigants. The logical extension of the majority's policy that a *claim* or injury is not complete, for purposes of notice, until the last element of a *cause of action* comes into being, might require litigants to file notices of *causes of action* instead of *claims.* Accordingly, a litigant who knows he has been the subject of a happening that *might* give rise to *some* cause of action, has to

---

1. Even *Haupt v. State,* 340 Md. 462, 667 A.2d 179 (1995), discussed *infra,* did not go so far.

2. Section 5–304(a) of the Courts and Judicial Proceedings Article states in relevant part that "an action for unliquidated damages may not be brought against a local government or its employees unless the *notice of the claim* required by this section is given within 180 days after the injury." (Emphasis added.)

do more than notify the local government of the occurrence of which he complains, but must give notice of the exact causes of action that might arise out of that occurrence. Later, he might well be limited to those causes of action he has identified and expressed in his initial 180–day notice to the local government.

It is important to note that the language of the notice statute is not the language of immunity nor does it create some type of limitations statute. It creates a condition precedent. No where does section 5–304 "Actions for unliquidated damages" of Subtitle 3, Local Government Tort Claims Act, refer to the accrual of causes of action. It is a notice of claim statute, not some type of limitations statute. It states in relevant part that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim ... is given within 180 days after the injury."

The majority focuses on the term "injury," instead of the term "claim," holding that until a cause of action exists, there is no injury. That is simply incorrect, and in the notice context, is totally inconsistent with over a half century of our cases, that are not overruled, and most not even mentioned, by the majority. In essence, the majority treats the term "claim" to be equivalent with the accrual of a cause of action, and then treats the 180–day notice provision as a statute of limitation based upon that accrual. This entire approach skewers a long standing body of authority in this State to the contrary.

Moreover, when the Legislature wants a matter of notice to depend upon the accrual of a cause of action, it knows how to utilize cause of action language. Section 5–203 "Ignorance of cause of action induced by fraud" provides: "If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time ... [of discovery of] the fraud." Section 5–105 "Assault, libel, or slander" provides that "[a]n *action* ... shall be filed within one year from the date *it* accrues." (Emphasis added.) Section 5–103(a), in reference to adverse possession,

states that action must be filed "[w]ithin 20 years from the date the *cause of action accrues.* ..." (Emphasis added.) Similar "accrual" language is used throughout the various limitation statutes. It is conspicuous by its absence in the notice statute at issue here. Yet the majority, in some fashion, extrapolates the term *injury,* to transform a condition precedent into the accrual reasonings of statutes of limitation. In my view, and the past views of this Court, that is incorrect.

I am unaware of any case in Maryland where this Court has addressed any requirement that all the elements of a cause of action must exist before a notice of a claim against a local governmental entity is required to be given.[3] Such a requirement defeats the purposes of the notice requirements in the first instance. More importantly, as I have indicated, the majority cannot logically adopt a position that the notice in this case was timely, although far beyond the period of notice for the actual incident, without also creating a requirement that a cause of action actually exist before notice is given.

The injury occurred to petitioner on the night of August 24, 1997, when he was arrested by Corporals Strader and Nalley of the Prince George's County Police Department. It was then that his freedom was restricted; it was then that charges were filed against him; it was then that his prosecution commenced; it was then that his "injury" began. The majority holds that for the purpose of false arrest and false imprisonment, the 180–day period to give notice of claim commenced at the time of injury, i.e., the incident of Heron's arrest. Yet, when considering the tort of malicious prosecution, the majority holds that the 180–day period to give notice of claim does not commence until termination of the criminal charges. Under this rationale, there would be no way to determine the commencement of the time period until the last possible cause of action that might be conceived of by counsel is, in fact, filed. In other words, under the majority's reasoning, the notice period for each cause of action would not begin to run until the

---

3. Even *Haupt, supra* and *infra,* construing the Maryland Tort Claims Act with its exceptions for third-party claims, does not so hold.

last element of each cause of action alleged can be conclusively determined. This, in turn, could result in the requirement of an injured party having to file multiple notice of claims for the same injury arising out of the same incident, depending on when each of the multiple causes of action come to fruition. That simply could not have been the intention of the Legislature. Such a conclusion is, in my view, absurd.

Under the majority's holding, if Heron had been convicted, rather than acquitted, had appealed to the Court of Special Appeals and there had his conviction affirmed, then filed a Petition for Writ of Certiorari with this Court, had it granted, and this Court also affirmed his conviction; then filed his first Post Conviction Petition and had his request for relief denied, appealed that denial through the appellate process, losing all the way; then filed a second *Post Conviction Petition* or even filed a Petition for a Writ of Coram Nobis many years thereafter, and had the trial court, or an appellate court, granted him a new trial,[4] and at that new trial, he was finally acquitted, the 180–day notice provision would only then, years or decades later, begin to run. In the meantime, the local government entity has no knowledge that something occurred ten or twenty years before, that might result in liability. That simply does not, and cannot, satisfy the condition precedent purpose of the notice provision, which we have consistently held is to afford a prompt opportunity to local governments to investigate the details of the occurrences creating potential liability.

The statutory notice requirement does not read, as the majority would have it read, that notice must be given within a certain time period of the last event to happen of a series of events relating to the accrual of a specific cause of action. Generally, the creation of such a standard in this case serves little useful purpose, even for plaintiffs; certainly not for local governments for whose benefit the notice requirements, indeed the Act itself with its "cap" requirements, was ostensibly

---

4. See our recent coram nobis case of *Skok v. State,* 361 Md. 52, 760 A.2d 647 (2000).

created. That the notice provisions constitute a condition precedent, as opposed to a statute of limitation or only an immunity waiver, is, in my view, clear.

Maryland's *Local Government Tort Claims Act* is found in the Courts and Judicial Proceedings Article under Title 5, *Limitations, Prohibited Actions, and Immunities,* Subtitle 3. The local act is not contained in *Subtitle 5. Immunities and Prohibited Actions—Governmental* of the Courts and Judicial Proceedings Article where the matter of certain immunities of local officials in motor torts is found. Section 5–507(b) of that subtitle provides in relevant part:

> (b) *Nonliability of officials generally; torts involving motor vehicles.* . . . .

> (2) An official of a municipal corporation is not immune from liability for negligence or any other tort arising from the operation of a motor vehicle except as to any claim for damages in excess of the limits of any applicable policy of motor vehicle liability insurance.

Several other sections of that subtitle of the Courts and Judicial Proceedings Article limit immunity for other governmental officials or entities, either directly or by referring to other statutes that do. *See* Md.Code (1957, 1998 Repl.Vol.) Art. 26 §§ 1–3. Accordingly, immunity is addressed in the Courts and Judicial Proceedings Article in an entirely separate subtitle from Subtitle 3 (*Local Government Tort Claims Act*). In my view, the provisions of the LGTCA relating to notice were intended to be separate and apart from the subsequent legislative treatment of immunity matters in later subtitles. As I perceive the thrust of section 5–304, it is not specifically concerned with immunity or the waiver of it. Instead, it creates a condition precedent to the filing of actions for unliquidated damages against local governments, continuing a long standing requirement applicable to suits against local governments. As I see the history of this Court's considerations of these notice provisions, our decisions have been based on a condition precedent analysis.

This Court has construed the predecessor statutes, statutes that existed before the enactment of either the local or state tort claims act, as creating conditions precedent. Construing, in part, the 1943 statute that first provided notice requirements before certain types of suits could be filed against municipal corporations, this Court stated in *Neuenschwander v. Washington Suburban Sanitary Commission*, 187 Md. 67, 71–72, 48 A.2d 593, 596 (1946), *overruled on other grounds by statute as stated in Arnold v. Prince George's County*, 270 Md. 285, 311 A.2d 223 (1973), that:

This suit was brought by Doris Neuenschwander in the Circuit Court for Prince George's County against Washington Suburban Sanitary Commission and the Mayor and City Council of Hyattsville to recover damages for injuries sustained on June 23, 1944, when she stepped upon the metal top of a sewer manhole along the sidewalk on Madison Street in Hyattsville. She alleged in her declaration that the metal top turned upwards, thrusting her left leg into the manhole, throwing her to the ground and severely wrenching her body; and that she has suffered continuous pain, has spent large sums of money for medical and hospital treatment, and has been advised to undergo a surgical operation. She further alleged that the manhole was maintained negligently by defendants and was in an unsafe condition for pedestrians. Defendants pleaded that, because of the fact that they are municipal corporations, they are not liable for damages. Plaintiff demurred to the pleas, and the Court sustained the demurrers on the ground that the declaration failed to allege that defendants knew or should have known of the defective condition.

The law is established that a municipal corporation may be held liable for injuries caused by its negligence in failing to keep the streets and sidewalks under its control reasonably safe for travel in the ordinary manner, and in preventing and removing any nuisance affecting their use and safety. *Cordish v. Bloom*, 138 Md. 81, 85, 113 A. 578 [ (1921) ]; *Mayor and City Council of Baltimore v. Eagers*, 167 Md. 128, 136, 173 A. 56 [ (1934) ]; *Mayor and City*

*Council of Baltimore v. Thompson,* 171 Md. 460, 189 A. 822 [ (1937) ]. But a municipal corporation is not liable for injuries caused by the defective condition of a street, unless it is shown that it had actual or constructive notice of such condition. Constructive notice is such notice as the law imputes from the circumstances of the particular case.

It is clear that in our consideration of that case we accepted that there was no immunity for local governments in respect to those specific facts, i.e., the failure to keep streets safe. We clearly noted that immunity was not available under those circumstances; that the local governments there involved were liable to suit. We nonetheless went on to hold that the notice requirements of the statute, the precise predecessor to the one at issue in the case at bar, constituted a condition precedent to the right to maintain any action in tort against a local government.

After the Court sustained the demurrers to the declaration, plaintiff filed an amended declaration. The first count was similar to the original declaration, but the second count alleged that defendants knew or, by the exercise of reasonable care, should have known of the dangerous condition of the manhole and metal top. *In the meantime defendants learned that the Legislature of Maryland had passed an Act in 1943, applicable to Prince George's County, providing that no suit for damages shall be maintained against a municipal corporation unless written notice of the claim shall be presented within 90* [5] *days after the injury or damage is sustained.* Defendants accordingly withdrew their pleas and filed demurrers alleging that plaintiff had failed to comply with the Act of 1943. The Act provides: "No action shall be maintained and no claim shall be allowed against any county or municipal corporation of Maryland, for unliquidated damages for any injury or damage to person or property unless, within ninety days after the injury or damage was sustained, written notice thereof

---

**5.** Over the years the amount of notice that must be given has changed. At present, it is 180 days.

setting forth the time, place and cause of the alleged damage, loss, injury or death shall be presented either in person or by registered mail by the claimant, his agent or attorney, or, in case of death, by his executor or administrator, to the City Solicitor of Baltimore City, the County Commissioners, or the corporate authorities of the municipal corporation, as the case may be...."

On account of plaintiff's failure to allege compliance with the statute, the Court sustained the demurrers and entered judgment for defendants.... The Maryland Legislature has declared the county commissioners of every county in the State to be a corporation (Code 1939, art. 25, sec. 1), and the Court of Appeals considers them to be a municipal corporation.

The attributes of a municipal corporation are possessed by Washington Suburban Sanitary Commission to an extent amply sufficient to bring it within that designation....

It is a fundamental doctrine that the Legislature may grant or deny to individuals a right of action against municipal corporations for injuries resulting from the negligent manner in which streets are maintained. When the Legislature creates a municipal corporation as part of the machinery of government of the State, it is within its province to adjust the relative rights of the corporation and the citizens. *The Legislature has thus the power to enact a statute requiring that, before suit for damages shall be instituted against a municipal corporation, a written notice of the claim shall be presented to the municipal authorities within a specified period after injury or damage is sustained.* Engle v. Mayor and City Council of Cumberland, 180 Md. 465, 470, 25 A.2d 446 [ (1942) ]; MacMullen v. City of Middletown, 187 N.Y. 37, 79 N.E. 863, 11 L.R.A.N.S. 391 [ (1907) ]. In order to maintain such an action, the declaration must allege that the notice prescribed by the statute was duly presented, *for the notice is a condition precedent to the right to maintain the suit.* If the declaration does not contain such an allegation, the defendant can object either by demurrer or plea. *Engle v. Mayor and City*

*Council of Cumberland,* 180 Md. 465, 469, 25 A.2d 446; *Greenleaf v. Inhabitants of Norridgwock,* 82 Me. 62, 19 A. 91; *Forbes v. Town of Suffield,* 81 Conn. 274, 70 A. 1023; *Reinig v. City of Buffalo,* 102 N.Y. 308, 6 N.E. 792; *Daniels v. Racine,* 98 Wis. 649, 74 N.W. 553.

*Id.* at 73–77, 48 A.2d at 596–98 (emphasis added) (some citations omitted). Our original holding that the notice requirement is a condition precedent is especially important in that in *Neuenschwander,* we were reviewing a cause of action in which there was no immunity. Our holding in that case was totally unrelated to governmental or sovereign immunity issues. It was a pure *condition precedent* holding.

We subsequently discussed *Neuenschwander's* treatment of the notice requirement in *Cotham v. Board of County Commissioners,* 260 Md. 556, 273 A.2d 115 (1971), where a party was attempting to assert that the notice requirement was merely a statute of limitation that had to be addressed by a plea of limitations not by a demurrer.[6] We said:

At [*Neuenschwander,* 187 Md. at 78, 48 A.2d at 599], he further described this act as "creat[ing] a condition precedent to the right to maintain an action for damages". Cotham seizes upon the next words in *Neuenschwander* which described this act as "[having] the effect of a statute of limitations."

Basically the same argument was presented in *State v. Parks,* 148 Md. 477, 129 A. 793 (1925), relative to suits arising under the Maryland wrongful death statute, now Code (1970 Repl.Vol.), Art. 67, § 4, which at that time provided "that every such action shall be commenced within

---

6. This case is one of several cases that do not rest upon "notice" being a substantive part of the cause of action, but refer, instead to special statutorily created periods of time in which the cause of action being created must be brought, as being a substantive part of the cause of action. These cases sometimes are concerned with the applicability of the "discovery rule" applicable to general statutes of limitation. The cases generally refer to the "special" provisions as being part of the substantive action—a condition precedent. *See Trimper v. Porter–Hayden,* 305 Md. 31, 501 A.2d 446 (1985).

twelve calendar months after the death of the deceased person." (Now two years.) The contention was made that this was merely a limitation on the time within which the action should be brought and therefore could only be availed of by a plea of limitations and not attacked by way of demurrer. In an opinion by Judge Walsh the Court held the provisions of the statute to be "a condition precedent to the right to maintain the action" and said that the characterization of the statute in an earlier opinion as a "statute of limitations" was not binding upon the Court in *Parks*.

. . . .

In *Redfern v. Holtite Mfg. Co.*, 209 Md. 106, 120 A.2d 370 (1956), the Court had under consideration what was then Code (1951), Art. 101, § 38 concerning the time within which death claims were required to be filed under the Workmen's Compensation Act. The claim on behalf of a child unborn at the time of the employee's death was filed more than one year after death. There was an attempt to rely upon the provisions of Code (1951), Art. 57, § 2 relative to limitations as applied to persons under disability of infancy or insanity. That claim was rejected.

In setting up the Unsatisfied Claim and Judgment Fund, the General Assembly provided for the filing of notice of intention to make a claim within 180 days after the accident. It is expressly made "a condition precedent to the right thereafter to apply for the payment from the fund". See Code (1970 Repl.Vol.), Art. 66 ½, § 7–606 . . . .

. . . .

In construing the Maryland act it must be borne in mind that it is of comparatively recent origin. It found its way into the Code of Public General Laws with the enactment of Chapter 809 of the Acts of 1943, following on the heels of an enactment for Montgomery County by Chapter 405 of the Acts of 1941. At that time it was applicable only to Montgomery, Prince George's and Caroline Counties. Even today it does not apply in all counties of the state. Since its enactment in 1943 it has been amended by the General Assembly at seven sessions. At the 1965 session three

separate acts were passed amending the statute and at the 1970 session two separate acts were passed. It must be borne in mind that prior to the 1965 session of the General Assembly such amendment could be made only in an odd numbered year. *To hold that notice given on May 19, 1969, "upon discovery of the negligence" in this case complies with this statute would be to judicially place in the statute language which is not there.* Examination of the body of Maryland law leads us to the conclusion that had the General Assembly intended notice under the circumstances here recited to comply with the statute, it would have so stated. The matter is one, however, that merits the close scrutiny of the General Assembly. . . .

*Cotham*, 260 Md. at 563–65, 273 A.2d at 119–20 (emphasis added) (some alterations in original).

Just as we said in *Cotham, supra*, 260 Md. at 565, 273 A.2d at 120, what the majority does with its decision in the case at bar, is to *"judicially place in the statute language which is not there."* (Emphasis added.) Had the Legislature intended a provision that notice need not be given until 180 days after all of a cause of action's elements exist, it would have so stated.

We cited our holding that notice requirements were conditions precedent in construing time limitations on filing cases, in the wrongful death case of *Smith v. Westinghouse Electric Corporation*, 266 Md. 52, 55, 291 A.2d 452, 454 (1972), where one of the issues was a statutory requirement that "every such action shall be commenced within *three* years after the death of the deceased person." We initially noted that the wrongful death action was a statutorily created action and then went on to discuss whether the time for the filing of that action was a condition precedent. Discussing a prior case we said:

Appellees contend that the effort of the General Assembly to have the amendment operate retrospectively is unconstitutional, first, because the period of limitations set forth in the Act is not merely a limitation of remedy but is a condition precedent to filing suit; and, second, because it

denies them the equal protection of the laws guaranteed by the 14th Amendment of the Constitution of the United States of America. Charles Street also contends that the question can be raised by motion for summary judgment. We agree.

. . . .

In No. 371, Appellants contend that the question of limitations should have been raised either by plea of limitations or by demurrer (*State v. Parks, supra* ) and cannot be raised by motion for summary judgment.

The period of time within which suit must be filed under Article 67, section 4, being a condition precedent to the institution of the action and not an ordinary statute of limitations, the question of whether the suit is barred by the statute can be raised by plea, demurrer, motion for summary judgment or any other appropriate procedure.

*Id.* at 55, 58, 291 A.2d at 454, 455–56.

We have remained consistent in our treatment of wrongful death cases. In the more recent wrongful death case of *Waddell v. Kirkpatrick*, 331 Md. 52, 57, 626 A.2d 353, 355 (1993), we framed the appellee's position as "they maintain that section 3–904(g) does not establish a statute of limitations at all; rather, it prescribes a time period as a condition precedent to maintaining a wrongful death action." Judge (now Chief Judge) Bell wrote for the Court that:

As the appellant correctly concedes, the time period prescribed in section 3–904(g) has been construed by this Court to be a condition precedent to maintaining the action, rather than a statute of limitation.

In *Parks*, the issue was whether the requirement in the wrongful death statute then in effect, Maryland Code (1912) Art. 67 § 2, requiring "that every such action shall be commenced within twelve calendar months after the death of the deceased person", is "a condition essential to the right to maintain the action given by the statute, or is merely a limitation of the remedy which must be pleaded to defeat the action." *Parks*, 148 Md. at 477–78, 129 A. at 793 . . . .

The [statute] create[s] a new legal liability, with the right to suit for its enforcement, provided the suit is brought within twelve months, and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all. . . . Time has been made of the essence of the right and the right is lost if the time is disregarded. The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right.

*Id.* at 480, 129 A. at 794.

In contrast, a statute of limitations affects only the remedy, not the cause of action. The failure of a defendant to raise the bar of limitations, timely, *see* Maryland Rule 2–323(g)(16), results in the waiver of limitations, which permits the plaintiff to proceed with the trial of his or her case. *Foos v. Steinberg*, 247 Md. 35, 38, 230 A.2d 79, 80 (1967); *Foard v. Snider*, 205 Md. 435, 451, 109 A.2d 101, 108 (1954); *Brooks v. State*, 85 Md.App. 355, 363–65, 584 A.2d 82, 86–87 (1991).

Once it has been established that section 3–904(g) is a condition precedent, as opposed to a statute of limitations, it follows inexorably that it does not fit within the prescription of section 5–101. Consequently, section 5–201 does not save a cause of action for wrongful death notwithstanding the disability of the plaintiff at the time the action accrued.

*Id.* at 57–60, 626 A.2d at 355–56 (some citations omitted) (footnotes omitted).

The situation in the case *sub judice* is similar, differing only in that a different statute, one relating to notice periods instead of filing periods, is involved. Judge Bell in *Waddell, supra*, held for the Court that, even though the plaintiff, who was three years old at the time her father was killed, could not maintain an action until she reached her majority, because the provision involved in *Waddell* was a condition precedent, she could not even then maintain the action, because it was

brought more than three years after the accident that had killed her father. We have consistently held that the provision at issue here, and similar provisions, are condition precedents.

We construed the exact type of notice requirement at issue in the present case in *Grubbs v. Prince George's County,* 267 Md. 318, 297 A.2d 754 (1972), a case that was primarily concerned with the adequacy of notice by regular United States mail on the county attorney. There, as to the character of the notice requirement itself, we again opined relying on the earlier cases that:

> As we have noted, having regarded § 18 [7] as a statute of limitations, the court below placed considerable emphasis upon the need for strict construction. We observe here, mainly for perspective, that we have never held § 18 to be a statute of limitations. Rather, we have regarded it as a condition precedent to the right to maintain an action for damages. *See Cotham and Maldonado v. Board,* 260 Md. 556, 563, 273 A.2d 115 (1971) and *Neuenschwander v. Wash. San. Comm.,* 187 Md. 67, 78, 48 A.2d 593 (1946).

*Id.* at 320–21, 297 A.2d at 755–56.

In a case challenging the validity of the Health Care Malpractice Claims statute, we noted that the predecessor statute to the one at issue here created a condition precedent, "(imposing as condition precedent to action against municipal corporation requirement that notice be given to it by claimant within 180 days after the injury or damage is sustained) (predecessor statute interpreted in *Cotham and Maldonado v. Board,* 260 Md. 556, 563–65, 273 A.2d 115, 119–20 (1971))." *Attorney General v. Johnson,* 282 Md. 274, 283 n. 9, 385 A.2d 57, 62 n. 9 (1978), *overruled on other grounds by Newell v. Richards,* 323 Md. 717, 594 A.2d 1152 (1991). In *Trimper v. Porter–Hayden* 305 Md. 31, 501 A.2d 446 (1985), we were concerned with an issue of the applicability of the discovery

---

7. Article 57, section 18 (1957, 1972 Repl.Vol.), where the notice requirement reposed in 1972, prior to the 1987 enactment of the LGTCA.

rule, that applies in respect to general statutes of limitations, when a statutorily created action contains a special provision requiring the specific action to be filed within a prescribed period of time. We opined, "... 'The period of limitations is part of the substantive right of action.' ... Thus, were we, by applying a discovery rule, to allow wrongful death actions to be filed more than three years after death, we would be violating the legislatively imposed time limitation on the legislatively created right of action." *Id.* at 35–36, 501 A.2d at 449, quoting *Slate v. Zitomer,* 275 Md. 534, 542, 341 A.2d 789, 794 (1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976), citing *Smith v. Westinghouse Electric Corp.,* 266 Md. 52, 55–56, 291 A.2d 452, 454 (1972); *see also Cotham and Maldonado v. Board, supra.*

In construing the notice limitation under the Maryland Tort Claims Act we found in the case of *Leppo v. State Highway Administration,* 330 Md. 416, 423, 624 A.2d 539, 542 (1993) that:

> The plain language of SG § 12–106(b) undermines Leppo's position. The 180–day requirement is a condition precedent to the institution of a third-party action against the State. *Lopez v. State Highway Admin.,* 327 Md. 486, 490, 610 A.2d 778 (1992); *Simpson v. Moore,* 323 Md. [215,] 225, 592 A.2d 1090 [ (1991) ]....

In *Haupt v. State* 340 Md. 462, 667 A.2d 179 (1995), an appellant asserted that the notice period under the Maryland Tort Claims Act should not begin to run in respect to indemnification and contribution until the third party has been injured by a judgment rendered in respect to the party directly injured. We said there:

> The purpose of the notice requirement of § 12–106 is patent. Requiring that notice be given to the State within 180 days after incurring the injury to which the claim relates obviously is designed to give the State early notice of claims against it. *Johnson v. Maryland State Police,* 331 Md. 285, 296, 628 A.2d 162, 167 (1993). That early notice, in turn, affords the State the opportunity to investigate the

claims while the facts are fresh and memories vivid, and, where appropriate, settle them at the earliest possible time. *Id.* at 470, 667 A.2d at 183.

The majority, in my view, misconstrues this Court's holding in *Haupt* by citing only a portion of our opinion, saying: "In *Haupt* ... we considered the question of when an injury arises pursuant to the notice requirement of the MTCA [Maryland Tort Claims Act] for third party claims. We held that notice had to be given when the "legally operative facts" permitting the filing of the claim came into existence."

First, *Haupt* was an action under the MTCA, not the LGTCA. Section 12–106 of the State Government Article, the MTCA's notice section, specifically states: "(a) *Scope of section.*—This section does not apply to a claim that is asserted by cross-claim, counterclaim, or third-party claim." *Haupt* was an action for indemnification. A third-party action "is in the nature of an indemnity." *Black's Law Dictionary* 1479 (6th ed.1990). No such exemption language exists in the LGTCA's notice requirement section, nor did it exist in the predecessor statutes out of which the LGTCA arose.

*Haupt* focused on the provisions of subsection 12–106(a)'s exceptions in the State act. In *Haupt,* 340 Md. at 465, 667 A.2d at 180, we noted that in *Leppo v. State Highway Administration,* 330 Md. 416, 624 A.2d 539 (1993), we left open the issue of "[w]hen does the 180–day clock begin to run in the case of third-party claims?" In *Haupt,* 340 Md. at 467, 667 A.2d at 181, we noted what we had said in *Leppo:*

The 180–day requirement is a condition precedent to the institution of a third-party action against the State.... [T]he only exceptions designated are cross-claims and counterclaims. The General Assembly could have added third-party claims to this short list, but it chose not to do so.

In *Haupt,* we continued by initially noting that the purpose of the notice provision "obviously is designed to give the State early notice of claims against it. That early notice, in turn, affords the State the opportunity to investigate the claims while the facts are fresh and memories vivid...." *Id.* at 470,

667 A.2d at 183 (citation omitted). We then noted a limitation to our holding in *Haupt,* in respect to the notice provision, that the majority does not mention in the case at bar. "As it relates to third-party actions—when a third-party plaintiff is involved—the phrase is simply ambiguous." *Id.* at 471, 667 A.2d at 183. We noted "[w]hen the tort claim is made by the plaintiff in the underlying action, *it is patent* that the 180–day period begins to run as soon as the plaintiff or the plaintiff's property is injured...." *Id.* at 472, 667 A.2d at 184 (emphasis added). We then specifically stated when the injury occurs: "*i.e.,* from the time of the accident." *Id.*

We then noted that "[g]iving ... its ordinary and common-sensical meaning, a claim is a broad and comprehensive term encompassing all species of legal demand." *Id.* at 473. 667 A.2d at 184. We thereafter distinguished matters relating to third-party claims from direct claims.

> While the date and place of the *alleged* tort are known at the precise moment when the accident occurred, the nature of a third party claim may not be known until much later....
>
> ... In other words, a third party claim may be brought even though the defendant in the underlying action has suffered no actual injury. For purposes of a third-party claim, therefore, "injury" has a different meaning than it has in the first party context.

*Id.* at 475, 667 A.2d at 185 (emphasis added).

We then, even in a third-party context, held just the opposite of what the majority holds in this case in respect to first party claims. We held:

> Although a claim for indemnification or contribution *does not accrue* until judgment has been entered against the party seeking indemnification or contribution, that does not mean that the party may delay giving the section 12–106(b)(1) notice until that time. The timeliness of the section 12–106(b)(1) notice is not tied to when a particular cause of action accrues; rather, it is dependent upon the

point at which the claimant suffered personal or property damage injury.

*Id.* at 476–77, 667 A.2d at 186 (emphasis added) (internal citations omitted).

In the case at bar, Heron was "injured," in the context of the notice provisions of the LGTCA when he was arrested and criminal proceedings commenced against him—not, as the majority now holds, when all elements of this cause of action accrued upon his acquittal. The position the majority takes in this case is actually inconsistent with the Court's holding in *Haupt,* when that case is considered in its entirety—and especially considering the conspicuous absence of exceptions in the LGTCA.

The intermediate appellate court has consistently applied our cases holding that the notice provision is a condition precedent. *Rivera v. Prince George's County Health Department,* 102 Md.App. 456, 649 A.2d 1212 (1994), *cert. denied,* 338 Md. 117, 656 A.2d 772 (1995) (notice is a condition precedent under the State Act that serves to provide the State with sufficient time to investigate the claim); *Prince George's County v. Blumberg,* 44 Md.App. 79, 112, 407 A.2d 1151, 1172 (1979) (primarily concerned with application of the good cause provisions of the then statute), *affirmed in part, remanded in part* by 288 Md. 275, 418 A.2d 1155 (1980). The Court of Special Appeals even applied the condition precedent aspect of the statute to limit the period for which damages could be collected in a "continuing" tort case in *Anne Arundel County v. Litz,* 45 Md.App. 186, 197–98, 412 A.2d 1256, 1262–63 (1980):

> The trial judge refused to grant the appellees damages because of their failure to give proper notice pursuant to *Md.Code,* Art. 57, § 18. Appellees argue that the statute does not apply to continuing and continuous invasions of property as were present in this case. Although a cause of action for a continuous injury is not cut off by the limitations period, damages for recovery in cases where there is a continuous invasion have been limited by the statutory

period. *See Shell Oil Company v. Parker,* 265 Md. 631, 291 A.2d 64 (1972); *Martin v. Arundel Corp.,* 216 Md. 184, 140 A.2d 146 (1958); *Consolidated Public Utilities Co. of Westminster v. Baile,* 152 Md. 371, 136 A. 825 (1927); *Commissioners of Aberdeen v. Bradford,* 94 Md. 670, 51 A. 614 (1902). Thus, in this case, appellees could only recover for damages occurring 180 days prior to giving notice.

This holding is supported by cases interpreting Art. 57, § 18. The purpose of the notice provision is to have the claimant furnish the municipal body with sufficient information to permit it to make an investigation in due time sufficient to ascertain the character and extent of the injury and its responsibility in connection with it. *Jackson v. Board of County Commissioners,* 233 Md. 164, 168, 195 A.2d 693, 695 (1963). The notice is a condition precedent to the right to maintain the suit. *Madore v. Baltimore County,* 34 Md.App. 340, 342, 367 A.2d 54, 56 (1976). *See also, Cotham v. Board of County Commissioners,* 260 Md. 556, 273 A.2d 115 (1971).

The rule that damages may be limited to the notice period under the statute is supported by cases from other jurisdictions. In *Thomann v. City of Rochester,* 256 N.Y. 165, 176 N.E. 129, 130 (1931), Judge Cardozo, in interpreting a statute which required notice to be given to the municipality within thirty days, stated:

"[The landowner] did not lose the right to some measure of relief by failing to give notice within the term of thirty days. What he lost was the right to include in the relief an award of damages antedating by more than thirty days the presentation of the notice in the statutory form."

*See also, Doran v. Town of Cheektowaga,* 54 App.Div.2d 178, 388 N.Y.S.2d 385 (1976). [Footnote omitted.] [Alteration in original.]

In the case of the notice provisions of the LGTCA, they have existed in Maryland law since 1943; long before the enactment of the present LGTCA and long before the enactment of the MTCA. These conditions have been judicially

construed, not as immunity waiver provisions, but as conditions precedent since *Neuenschwander, supra,* (a case in which no immunity existed) was decided in 1945.

I believe that the relatively recent legislative history of the modifications of the statutes applicable to local governments, do not reflect any legislative intent to make it easier to file actions for unliquidated damages against local governments. The Bill Analysis of the Senate Judicial Proceedings Committee concerning Senate Bill 237, subsequently finalized as Chapter 594 of the Acts of 1987, (the Local Government Tort Claims Act) provided to the Legislators, that: "The bill also sets as a *condition precedent* to the suit against a local government for unliquidated damages, the giving of notice at least 180 days after the claim...." (Emphasis added.) The term "at least" is a clear mistake. It is obvious that the Analysis meant "within" 180 days. In describing the changes to the Courts and Judicial Proceedings Article it uses the term "within." In the subsequent Committee Report, the Committee includes in the "Background" section the following:

> In recent years, local governments have increasingly become targets for liability claims.

> Senate Bill 237 will address the existing liability crisis for local governments and problems of increasing claims, higher judgments, larger settlements and the availability and affordability of insurance.

> Cities and towns may pay the bill for higher and higher insurance premiums, but it is the taxpayer who is the real victim. The choice for all local governments, when presented with huge cost increases is either higher taxes or reduced services.

The testimony in support of, and in opposition to, the bill all support that it was intended to strengthen local governments' abilities to withstand suits, and the judgments resulting from them. The statement of Ms. Maureen Lamb, the First Vice–President of Maryland Association of Counties and Chairperson of its Legislative Committee, as well as a member of the

Anne Arundel County Council, is typical of many of the statements. It included:

> In analyzing the situation it was soon realized that the problem was greater than merely a down cycle of the insurance market. Insurance companies were not only raising prices, they were abandoning the business of insuring governments.
>
> . . . .
>
> Two recent events will give you some idea why our association continues to support this bill before you. On the tenth, Monday two weeks ago, Washington County was informed that their insurance policy for public officials' liability would not be renewed. At the end of that week Caroline County received even worse news, their carrier for general liability and some property coverage was not renewing a relationship which had lasted for over 20 years. . . .
>
> Local governments need the protection afforded by the Local Government Tort Claims Act because we are facing a liability crisis[:] everyone wants to sue us. Our liability is only limited by the size of our tax base. Unlike corporations and persons operating in the private sector, it is just not right for us to seek the protection of bankruptcy. We are the ultimate deep pocket, and because of the unique services we provide—services which affect the day to day lives of most citizens—we are constantly vulnerable to suit.

Representatives of the Maryland Municipal League, Montgomery County, and Baltimore City testified similarly, directly or by document, in support of the bill, as did Governor Schaeffer. The major provisions of the amended statute addressed cap provisions, but, as the legislative reports indicated, the Legislature, at least through its committees, was well aware that the 180–day notice provision was to continue to be viewed "as a condition precedent to a suit" and that the bill "requires that a notice of claim be given within 180 days of the injury as a condition precedent to the bringing of an action . . . ."

Senate Bill 237 of 1987, which established the Local Government Tort Claims Act, included in it a condition precedent (180–day notice) to the bringing of suit. The 180–day notice requirement was specifically identified, by constituent elements of the General Assembly, to the body as a whole, as a "condition precedent" to bringing action. Moreover, it merely codified in the Local Government Tort Claims Act a provision that had been in effect as a condition precedent to bringing tortious actions against local governments since 1943. As a "condition precedent," it is required that notice be given within 180 days of the incident complained of, or the right to sue is lost.

I reiterate: notice and immunity, although both can be used to effectively curb lawsuits, serve different purposes. While immunity protects the government (and sometimes other entities) from lawsuits, notice gives the government time and a prompt opportunity to investigate claims in order to determine whether the claims might be, or might ripen into, causes of action against the governmental entity.

If the notice provision at issue is a condition precedent to maintaining a suit for unliquidated damages, as I believe it is, and as this Court since 1943 has consistently said it is, the time to give notice, as we so recently stated in *Haupt,* starts to run, not when a cause of action might finally accrue, but when the incident allegedly damaging a party, that gives rise to a claim, or potential claim, occurs. The majority's present position is inconsistent with a line of cases of this Court holding that the notice provision is a condition precedent. Moreover, it ignores the oft-stated purpose of the notice provision being construed. Accordingly, I would affirm.

Chief Judge BELL and Judge WILNER have authorized me to state that they join in the views expressed herein.