807 A.2d 632

Robert MOORE,

v.

Mostaba NOROUZI, et al.

Stuart C. Mendelson et ux.,

v.

Phillip George Brown et al.

Nos. 126 & 127, Sept. Term, 2000.

Court of Appeals of Maryland.

Sept. 25, 2002.

Robert J. Zarbin (Harvey A. Kirk of Saiontz, Kirk & Miles, P.A., on brief), Baltimore, for appellant.

Karen L. Federman Henry, Associate County Attorney (Charles W. Thompson, Jr., County Attorney, Brian G. Kim and Paul F. Leonard, Jr., Associate County Attorneys, on brief), Rockville, for appellees.

Walter E. Laake, Cary J. Hansel of Joseph, Greenwald & Laake, P.A., Greenbelt, brief of the Maryland Trial Lawyers Ass'n filed on behalf of appellants, amicus curiae.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, Chief Judge.

In these consolidated appeals, we have been asked to address whether: by notice to a third party claims administrator acting on behalf of a local government, the petitioners, Robert Moore ("Moore") and Stuart C. Mendelson ("Mendelson") [1] actually complied with the notice requirement of the Local Government Tort Claims Act ("LGTCA"), Md.Code (1974, 1998 Repl.Vol., 2000 Cum.Supp.) § 5–304 of the Courts and Judicial Proceedings Article; [2] such notice constitutes substantial compliance with the notice requirement; [3] the court, because good cause was shown and the local government defendant were not prejudiced, could entertain the action in any event.[4] The Circuit Court for Montgomery County resolved each of these issues against the petitioners and entered judg-

---

1. Mr. Mendelson's wife, Joyce, is also a petitioner.

2. Unless otherwise noted, all future statutory references also are to the Courts and Judicial Proceedings Article (1974, 1998 Replacement Volume).

3. There is no contention by the respondents that the information the petitioners gave Trigon, and in the case of the Mendelsons, the Montgomery County Division of Risk Management, about the accident and their claim did not satisfy the requirements of the LGTCA.

4. These issues were presaged by this Court in *Williams v. Maynard*, 359 Md. 379, 387–88, 754 A.2d 379, 383–84 (2000), in which we specifically noted that they were raised and decided by the Court of Special Appeals, but were not presented in that case.

ment in favor of Montgomery County, one of the respondents. We shall reverse.

## I.

In both of these cases, the petitioners were injured in an accident, in which an employee of Montgomery County was involved and, according to the petitioners, that employee's negligence caused. In both, Trigon Administrators, Inc. (hereinafter "Trigon") provided claims administration services for the Montgomery County Self–Insurance Program, which provides coverage for "Workers' Compensation, Commercial General Liability, including Public Officials and Public Protective Liability, Business Automobile, Automobile Physical Damage, Real and Personal Property and miscellaneous property." In neither did the petitioners send any notice to the County Executive and there is nothing in the record to indicate that the County Executive was provided with any written notification from any other source.

Trigon acts pursuant to a contract solicited by the Montgomery County Government, Department of Finance, Division of Risk Management.[5] In furtherance of the County's goals of, among others, "bringing the claims management/risk management information system ... in-house to the Division of Risk Management," thus providing a fully automated system that is integrated with the County's existing accounting and other information systems and can be used by the third party claims administrator to enter claims data, print checks and run experience reports, Trigon is charged, under that contract, with achieving currency between the data it uses or maintains and the Division of Risk Management's information system. It is permitted to do so in either of two ways: using on-line access to the County risk management information

---

**5.** The request for proposal for the contract indicated that the present claims administrator, who was also Trigon, paid "liability claims up to a total value of $2,500.00." Those claims were paid from funds provided by the Montgomery County Self–Insurance Program.

system or providing on-line access to Risk Management to its risk management information system.

The provisions of Trigon's contract with the County with regard to claims handling in general are extensive and comprehensive. In addition to other provisions requiring periodic reviews, evaluations and reports, some of the contents of which are also prescribed, the contract requires the claims administrator, at a minimum, to:

"a. Date-stamp all correspondence on the day it is received.

"b. Create a claim file folder, with a file number and a record of the name of the adjuster assigned to handle the claim. . . .

"c. Set reserve amounts for each claim.

"d. Enter the claim information on the computer database within five days of receipt of the claim. All information captured on claim report forms submitted by participating agencies must be available on the database. . . .

"e. Contact the claimant within one working day of notification of bodily injury claims . . . and within three working days for property claims. Contact must be made in person or by telephone. . . . Personal contact will be made on any claim involving . . . when the total reserve is over $10,000.00.

"f. Maintain an orderly claim file. Correspondence must be placed in the file in chronological order on a brad or another means of affixing documents to the file."

\*      \*      \*      \*      \*      \*

"j. Each file will contain a form developed by the contractor that will clearly state the results of the investigation of the claim and an explanation of the decision of liability/compensability/denial.

\*      \*      \*      \*      \*      \*

"l. When requested or required, recorded statements will be transcribed.

"m. Each foldered claim file will be reviewed at least every 45 days. Documentation of the review is preferred to be made on the computerized claims data management system. Documentation to be recorded will include appropriate comments on information received, file direction by the adjusters, and the disposition plans.

    \*     \*     \*     \*     \*     \*

"o. A supervisor or manager will review each open foldered claim at least quarterly. Documentation of the review is preferred to be made on the computerized claims data management system. Documentation to be recorded will include recommendations of future handling of the file.

    \*     \*     \*     \*     \*     \*

"r. A typed captioned report will be completed on each file with combined reserves of $25,000.00 or more. The captioned report must be completed and submitted to the Division of Risk Management within 60 days of the posting of the reserves.

"s. Final reserves must be computed and posted on the file within 180 days of the date the claim is received...."

The contract also prescribes the duties of the claims administrator with respect to specific claims. As to workers' compensation claims, it is required to "perform all duties required of the employer under the Maryland Workers' Compensation Act." Its responsibilities with regard to Commercial General Liability are to "record, investigate, tabulate, adjust, appraise, and, where appropriate, make payments for all claims which require defense or indemnification under the Montgomery County Self–Insurance Program." In addition, it must:

"Cooperate with and assist the Office of the County Attorney, or other designated counsel, in the defense of claims and in subrogation recovery. Such assistance will include, but not be limited to, making a full investigation, including contacting the claimant, taking statements from the claimant, identifying and taking statements from all witnesses, obtaining all bills, taking relevant photographs, completing interrogatories, taking recorded statements, providing for

Independent Medical Examinations, preparing status updates, and attending and/or assisting at trials and/or hearings. Once a lawsuit is filed and the claim is transferred to the Office of the County Attorney, or other designated counsel, the above assistance will continue."

Providing notice of claims and records of claims to excess insurance carriers and negotiating settlements, as well as providing immediate notification to the Chief, Division of Risk Management and the County Attorney in all cases in which catastrophic injuries or damages are involved are other responsibilities. Although able to settle claims for $2,500.00 or less, when the contemplated settlement is more than that amount, review with the County Attorney's Office is required, accompanied by "a detailed case synopsis, an itemization of damages, and settlement recommendations."

The County places requirements on Trigon's service availability. It must be open for business on the days and during the hours of operation of the County offices. Moreover, telephone coverage must be continuous, around the clock, to ensure receipt of incident reports and messages.

We shall set out the facts and procedural history of each case separately.

### a. Robert Moore v. Mostaba Norouzi, et. al.

On October 14, 1995, the petitioner Robert Moore was a passenger on a Montgomery County Ride–On Bus being operated by the respondent Mostaba Norouzi ("Norouzi"). Moore sustained serious injuries to his back, pelvis, hip, and left knee when Norouzi lost control of the bus and collided with another motor vehicle.

Within two or three days after the accident, Trigon contacted Moore regarding the accident. He discussed the accident with the Trigon representative. Thereafter, on November 1, 1995, Moore's attorney wrote Trigon and confirmed what Moore had already reported and that he represented Moore in the matter. Acknowledging that letter, significantly, Trigon indicated that it "is the third party administrator for Mont-

gomery County, and is currently investigating the facts surrounding [the accident]." To permit its proper investigation, it requested "being allowed to take a statement from [Moore], as well as receipt of all applicable medicals and lost wage information." A month later, by letter from its Senior Claims Representative, Trigon again represented itself "as the claims administrator for Montgomery County" and sought information, documentation and authorizations necessary "[i]n order to progress with a thorough investigation."

When, after more than two years, negotiations with Trigon were fruitless, Moore filed suit in the Circuit Court for Montgomery County, naming Norouzi and Montgomery County as defendants. The suit was dismissed by the court, on motion of the respondents.[6] The court ruled:

> "Following the decision by the Court of Appeals in *Williams*,[7] defendant has renewed its motion to dismiss, essentially putting before the Court the fact that the law remains clear that notice must be followed pursuant to the local government tort claims act, and that notice was not followed under the facts and circumstances of this case.
>
> "I agree that it does appear that in the *Williams* case, the footnotes, the language that is being suggested by the Court of Appeals that my earlier decision should stand, but given the posture of the case law as set forth in *Williams* there

---

**6.** Initially when the respondents moved to dismiss the Moore action, the court denied it and, instead, granted Moore's Motion to Waive Notice Requirement. Subsequently, the Court of Special Appeals having decided *Williams v. Montgomery County*, 123 Md.App. 119, 716 A.2d 1100 (1998) and this Court having granted certiorari to review it, the trial court granted a joint motion to stay the proceedings pending our decision in that case. The respondents renewed their Motion to Dismiss after we issued our opinion in *Williams v. Maynard*, 359 Md. 379, 754 A.2d 379 (2000). The renewed motion was filed pursuant to Maryland Rule 2–322(c), which permits the trial court, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, to consider matters outside the pleading and treat the motion as one for summary judgment and dispose of it as provided in Rule 2–501. That is what the trial court did in this case.

**7.** *Williams v. Maynard*, 359 Md. 379, 754 A.2d 379 (2000).

was the notice requirements of the local government tort claims act that was not met in this case."

Moore noted an appeal to the Court of Special Appeals; however, we granted certiorari on our own motion before the intermediate appellate court decided the case. *Moore v. Norouzi,* 362 Md. 625, 766 A.2d 149 (2001).

b. Stuart C. Mendelson, et. ux. v.
Phillip George Brown. et. al.

On April 18, 1996, the automobile driven by the petitioner Stuart C. Mendelson, while at a complete stop, in preparation to making a right turn, was struck in the rear by a county-owned police vehicle driven by the respondent George Phillip Brown, a Montgomery County Police Officer. At the time of the accident, Brown was acting within the scope of his employment. As a result of the collision, Mendelson sustained injuries.

On the next day, respondent, Mrs. Mendelson, reported the accident, by telephone, to K. Williams of the Montgomery County Division of Risk Management. The Division of Risk Management is a part of the County's Department of Finance, a department in the executive branch of county government. Ms. Williams completed a Telephone Claim Report, listing Mendelson as the injured party and including the Montgomery County Police Accident Report number, the time and place of the accident, and a description of how the accident occurred. The Telephone Claim Report subsequently was transmitted to L. Bales, the Claims Manager in the County's Office of Risk Management, who forwarded it to Trigon, the claims administrator for Montgomery County.[8]

On April 26, 1996, eight days after the accident, Mrs. Mendelson telephoned Trigon and informed them of the damage to their vehicle. Trigon advised her to obtain two esti-

---

[8]. The Montgomery County Police Department conducted an investigation at the scene and filed a written Accident Report. That report concluded that the accident was caused by Brown's failure to reduce his speed to avoid a collision.

mates of the damages. On the same day, a Senior Claims Representative at Trigon, wrote to Mr. Mendelson, identifying Trigon "as the claims administrator" for the Montgomery County Police and advising that, "[w]e have received formal notification of this incident [the accident of April 18, 1996]."

Thereafter, the Mendelsons informed Trigon that they were represented by counsel. As a result, Trigon sent a letter to Mendelson's attorney, in which it acknowledged his representation with respect to the accident. In addition, after informing him of its status as claims administrator for the Montgomery County Government, it advised that the claim was under investigation and requested that he provide any additional information which might aid in the investigation. The petitioners' attorney maintained consistent contact with Trigon and kept Trigon informed of the petitioners' medical treatment.

On April 16, 1999, the Mendelsons filed suit against the County and Brown in the Circuit Court for Montgomery County. The respondents filed a Motion to Dismiss pursuant to Maryland Rule 2–322(b), arguing as they did in the *Moore* case, that the petitioners failed to comply with the LGTCA's notice requirements. The trial court granted the motion. Although finding that the County was not prejudiced by the failure to give the requisite notice of claim to the County Executive, it concluded that the Mendelsons failed to demonstrate sufficient good cause to permit the court to allow the suit to proceed. The petitioners noted an appeal to the Court of Special Appeals, but we granted certiorari on our own motion while the case was pending in that court. *Mendelson v. Brown*, 362 Md. 624, 766 A.2d 147 (2001).

## II.

The purpose of the LGTCA is to provide a remedy for those injured by local government officers and employees acting without malice and in the scope of employment, while ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public

employee's actions. *Ashton v. Brown,* 339 Md. 70, 107–08, 660 A.2d 447, 465–66 (1995). Thus, the LGTCA requires Maryland counties and other entities defined therein as "local governments," § 5–301(d),[9] to pay, up to certain limits, judgments for compensatory damages rendered against their employees as a result of tortious acts committed in the scope of employment. *Williams v. Maynard,* 359 Md. 379, 380–81, 754

---

9. Section 5–301(d) enumerates the entities that are included in the phrase, "local governments," specifically:

"(1) A chartered county established under Article 25A of the Code;

"(2) A code county established under Article 25B of the Code;

"(3) A board of county commissioners established or operating under Article 25 of the Code;

"(4) Baltimore City;

"(5) A municipal corporation established or operating under Article 23A of the Code;

"(6) The Maryland–National Capital Park and Planning Commission;

"(7) The Washington Suburban Sanitary Commission;

"(8) The Northeast Maryland Waste Disposal Authority;

"(9) A community college or board of trustees for a community college established or operating under Title 16 of the Education Article, not including Baltimore City Community College;

"(10) A county public library or board of trustees of a county public library established or operating under Title 23, Subtitle 4 of the Education Article;

"(11) The Enoch Pratt Free Library or Board of Trustees of the Enoch Pratt Free Library;

"(12) The Washington County Free Library or the Board of Trustees of the Washington County Free Library;

"(13) A special taxing district;

"(14) A nonprofit community service corporation incorporated under State law that is authorized to collect charges or assessments;

"(15) Housing authorities created under Article 44A of the Code;

"(16) A sanitary district, sanitary commission, metropolitan commission, or other sewer or water authority established or operating under public local law or public general law;

"(17) The Baltimore Metropolitan Council;

"(18) The Howard County Economic Development Authority;

"(19) The Howard County Mental Health Authority;

"(20) A commercial district management authority established by a county or municipal corporation if provided under local law;

"(21) The Baltimore City Police Department;

"(22) A regional library resource center or a cooperative library corporation established under Title 23, Subtitle 2 of the Education Article; and

"(23) Lexington Market, Inc., in Baltimore City."

A.2d 379, 380 (2000). *See* § 5–303(b).[10]

The LGTCA generally requires that plaintiffs give local government defendants notice of claims within 180 days of the injury, § 5–304(a),[11] and that such notice be given to designated government officials. § 5–304(b)(1).[12] We have explained the purpose of the notice requirement, "to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible

---

**10.** Md.Code (1974, 1998 Repl.Vol., 2000 Cum.Supp.) § 5–303(b) of the Courts and Judicial Proceedings Article provides:

"(b) When government liable.—

"(1) Except as provided in subsection (c) of this section, a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government.

"(2) A local government may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee established in this subsection."

**11.** Section 5–304(a) provides:

"(a) Except as provided in subsection (c) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury."

**12.** Section 5–304(b) prescribes the "[m]anner of giving notice." It provides:

"(1) Except in Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of a defendant local government, or:

"(i) In Baltimore City, to the City Solicitor;

"(ii) In Howard County, to the County Executive; and

"(iii) In Montgomery County, to the County Executive.

"(2) In Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county solicitor or county attorney.

"(3) The notice shall be in writing and shall state the time, place, and cause of the injury."

liability at a time when it could conduct its own investigation, *i.e.*, while the evidence was still fresh and the recollection of the witnesses was undiminished by time, 'sufficient to ascertain the character and extent of the injury and its responsibility in connection with it." *Williams v. Maynard, supra,* 359 Md. at 389–90, 754 A.2d at 385 (internal citations omitted) (quoting *Bartens v. City of Baltimore,* 293 Md. 620, 626, 446 A.2d 1136, 1138–39 (1982)). *See Jackson v. Board of County Commissioners,* 233 Md. 164, 167, 195 A.2d 693, 695 (1963).

In light of this purpose, this Court has recognized that substantial compliance with the statutory requirements may nevertheless satisfy the statute where the purpose of the notice requirement is fulfilled. *See Williams v. Maynard,* 359 Md. at 390, 754 A.2d at 385; *Grubbs v. Prince George's County,* 267 Md. 318, 325, 297 A.2d 754, 758, (1972); *Jackson v. Board of County Commissioners,* 233 Md. at 167–68, 195 A.2d at 695; *But see Loewinger v. Prince George's County,* 266 Md. 316, 292 A.2d 67 (1972).[13]

The LGTCA includes an exception to the notice requirement also. Section 5–304(c) provides that "unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." The question of whether there is good cause to waive the notice requirement is within the discretion of the trial court. *Heron v. Strader,* 361 Md. 258, 270, 761 A.2d 56, 62 (2000); *Madore v. Baltimore County,* 34 Md.App. 340, 344, 367 A.2d 54, 57 (1976); *Downey v. Collins,* 866 F.Supp. 887, 889 n. 7 (D.Md.1994). The trial court's findings will not be disturbed, therefore, absent a showing of an abuse of discretion. *Heron,* 361 Md. at 271, 761 A.2d at 63; *Madore,* 34 Md.App. at 344, 367 A.2d at 56–57;

---

13. Although, with the exception of *Williams,* these cases were decided prior to 1973 and, so, involved the precursor to the LGTCA, Maryland Code (1957, 1972 Repl.Vol.) Art. 57, Section 18(b), which was repealed by Laws of 1978, Ch. 770, as relevant to our analysis, the statutes are substantively the same.

*Westfarm Assocs. v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669, 676 (4th Cir.1995). The test for whether good cause exists to permit waiver is that of ordinary prudence, that is, "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron*, 361 Md. at 271, 761 A.2d at 63 (quoting *Westfarm Assocs.*, 66 F.3d at 676–77); *see also Madore*, 34 Md.App. at 345, 367 A.2d at 57.

### III.

The petitioners present several arguments in support of their contention that the dismissal of their cases was error. First, they assert that they complied with the notice requirement, having given notice, within the time prescribed by the LGTCA and as required, to Trigon, a "corporate authority" within the meaning of § 5–304(b)(1).[14] Second, they argue that Trigon is an agent of the County Council, corporate authority, or the County Executive and, therefore, that notice to Trigon is deemed notice to the principal under longstanding agency principles. The Mendelsons maintain that they substantially complied with the notice provisions of the LGTCA, having provided the agency charged with handling negligence claims against the County, the Division of Risk Management, all of the information required by § 5–304(b)(3) and in the time required by § 5–304(a). The petitioners finally argue that, even if they did not give the requisite notice, their correspondence and dealings with Trigon, and reliance thereon, established good cause for their failure to file the required

---

**14.** All petitioners argue that Trigon is a "corporate authority," one of the alternative designated government officials, in the case of Montgomery County, to whom notice is to be given. Thus, if notice to "corporate authorities" is, in fact, an appropriate alternative to giving notice to the County Executive, then logically notice to the "corporate authorities" would be actual compliance with the notice requirements of the LGTCA. The Mendelsons make that argument as an alternative argument. Their principal argument is that they substantially complied with the LGTCA by giving actual notice to the County's Division of Risk Management.

notice; thus, the requirement should have been waived pursuant to § 5–304(c).

The respondents do not agree. Pointing to the plain language and legislative history of the LGTCA and the structure of § 5–304(b), the respondents argue that the provision for notice to "corporate authorities" is only applicable to entities that are not expressly referenced in the balance of § 5–304(b). They conclude, therefore, that § 5–304(b) requires that notice to Montgomery County must be served on the County Executive.

Nor do the respondents believe that the petitioners substantially complied with the notice provisions of the LGTCA. They submit that notice to Trigon, because it is not a part of the County and, in any event, is not the designated official to whom notice is required to be given, simply is not sufficient. As the respondents read *Jackson, Grubbs* and *Loewinger,* substituted service on an agent of the local government will not do; although deviation from the method of providing the notice may be overlooked, the notice nevertheless must be given to the official designated in the statute.

In response to the petitioners' argument that good cause exists to permit waiver of the required notice, submitting that an ordinarily prudent claimant would have consulted the statute and complied with its plain language, the respondents argue that the failure of the petitioners to consult the statute or to make themselves aware of the formal statutory requirements does not establish good cause for failing to comply with the statute. They further assert that an ordinarily prudent claimant would not have relied on his correspondence and dealings with the county's third party claims administrator to determine whether he or she had complied with the statutory requirements.

## IV.

Although extremely interesting and certainly presented on this record, we will not address the petitioners' arguments based on the statutory construction of § 5–304(b) and,

thus, the meaning of "corporate authorities" or agency. Whatever we might decide with respect to either issue, we believe that reversal is mandated because the petitioners substantially complied with the notice requirements and, in any event, good cause exists to excuse the failure to give the notice. Accordingly, we shall assume, but not decide, that Trigon does not fall within the ambit of "corporate authorities" [15] and that agency principles do not apply.

■■■■ As we have seen, this Court has held that strict compliance with the notice provisions of the LGTCA is not always required; substantial compliance may suffice. That is the case when the purpose of the LGTCA has been achieved, even though not all of the details prescribed have been complied with. *Jackson,* 233 Md. at 168, 195 A.2d at 695. Thus, substantial compliance requires more than a mere lack of prejudice to the government entity. *Johnson v. Maryland State Police,* 331 Md. 285, 292, 628 A.2d 162, 165 (1993). There must be some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision. *Loewinger,* 266 Md. at 318, 292 A.2d at 68; *Williams v. Montgomery County,* 123 Md.App. 119,

---

15. The respondents reject the construction of § 5–304(b) that would expand the scope of who may be served in Montgomery County beyond the County Executive. We note that Judge Eldridge, writing for the Court in *Williams v. Maynard,* 359 Md. 379, 388 n. 6, 754 A.2d 379, 384 n. 6 (2000), intimated the opposite, when, after summarizing § 5–304(b), he observed:

"Consequently, in Montgomery County, notice to the County Executive is simply an alternative to notice to the 'county council, or corporate authorities.' The language in the former notice statute was virtually the same as in § 5–304, except that 'corporate authorities of a defendant local government' read 'corporate authorities of a defendant municipal corporation.' As various entities which have no County Executive, Council, or Commissioners are deemed local governments under the LGTCA, the amended phrase 'corporate authorities' was obviously intended to have a broad meaning. No issue has been raised in this case as to whether notice was actually given to appropriate 'corporate authorities' of Montgomery County. Furthermore, no issue has been raised as to whether notice was given to an entity acting as the 'agent' for the County Executive, and whether notice to the 'agent' would constitute notice to the principal under the circumstances."

131, 716 A.2d 1100, 1106 (1998), *aff'd, sub nom., Williams v. Maynard,* 359 Md. 379, 754 A.2d 379 (2000). *See Cunninghame v. Cunninghame,* 364 Md. 266, 286, 772 A.2d 1188, 1200 (2001) ("[A] claimant is not in substantial compliance with section 8–104 and Rule 6–413 when the claimant presents a claim to a person who has not been appointed the personal representative"); *Blundon v. Taylor,* 364 Md. 1, 22, 770 A.2d 658, 670 (2001) (substantial compliance has no application to an outright failure to comply); *Simpson v. Moore,* 323 Md. 215, 228, 592 A.2d 1090, 1096 (1991) (same). As we said in *Condon v. State of Maryland–University of Maryland,* 332 Md. 481, 496, 632 A.2d 753, 755 (1993), (quoting *Conaway v. State,* 90 Md.App. 234, 246, 600 A.2d 1133, 1138 (1992)), substantial compliance is "such communication that provides the State 'requisite and timely notice of facts and circumstances giving rise to the claim.' "

In *Jackson,* the issue was whether notice timely given, verbally to an assistant county attorney and by ordinary mail, to the county commissioners, the county officials designated to receive the notice, but not in the manner the statute specified, i.e., by delivery in person or by certified mail, was sufficient compliance with the notice requirements. 233 Md. at 166–67, 195 A.2d at 694–695. Rejecting the County's argument that the notice was deficient in two critical respects, it provided no notice of the plaintiff's claim, only of a claim for property damage and it was not delivered as the statute prescribed, either in person or by registered mail, *id.* at 167, 195 A.2d at 695, this Court opined:

"The purpose of the statute clearly would seem to be to have the claimant furnish the municipal body with sufficient information to permit it to make an investigation in due time, sufficient to ascertain the character and extent of the injury and its responsibility in connection with it. The Legislature expressly provided that there be given the municipality written notice of 'the time, place and cause' of the alleged injury. The written notice which the County received in this case said there was a claim for damages against the County by Phyllis and William Jackson and

their insurance carrier by reason of a collision with 'a County Roads truck operated by Joseph Frank Havranek' on January 18, 1962, at Solley Road and Powhatan Beach Road. This would seem to be literal compliance with the statute's requirement of advice as to 'the time, place and cause of the alleged damage' and certainly, we think, there was substantial gratification of the purpose of the statute when the appellant, Phyllis Jackson, put the County on notice that she had a claim for damages suffered at a specified time and place and from a stated cause. Under the great weight of authority, substantial compliance is enough. . . .

"It is conceded that the appellant did not either deliver the notice in person or cause it to be delivered by registered mail, but it is also a stipulated fact that the notice, which we hold met the statutory standards, was actually received by the County in the ordinary mail within the time set by the Code provision. Statutes of this type are part of the law of many States and the majority of the cases recognize that the purpose of their specifics as to delivery is to make sure that notice actually is received within a short enough time after the injury occurs to give the municipality an opportunity to investigate while the matter is fresh. If the purpose of the statutes is fulfilled, the manner of the accomplishment of the fulfillment has not generally been tested too technically. . . . In such cases substantial compliance generally is held to be enough."

233 Md. at 167–68, 195 A.2d at 695.

Whether there was substantial compliance with the notice requirements was again at issue in *Grubbs*. There, the notice, being required to be presented within one hundred and eighty days, was sent, by registered mail, on the last day and received by the proper recipients on the next day. 267 Md. at 319–320, 297 A.2d at 755. Prince George's County argued that the notice was untimely as it was not received within the notice period. *Id.* at 320, 297 A.2d at 755. The Court held that there was substantial compliance. Acknowledging that a notice requirement generally imports receipt, we stated that a

different construction may result where the statute provides for notice by registered mail. *Id.* at 323, 297 A.2d at 757. The Court concluded,

"when the Legislature provided that written notice of a claim ... 'shall be presented *either* in person *or* by registered mail' (emphasis added), it settled upon two alternative methods of giving notice: personal delivery of the written notice on or before the one-hundred-eightieth day or the mailing of written notice by registered mail on or before the one-hundred-eightieth day without regard, in the latter situation, to whether receipt occurs before or after the expiration of one hundred eighty days following injury."

*Id.* at 325, 297 A.2d at 758.

We reached a different result in *Loewinger.* There, the plaintiff was injured while undergoing tests at a hospital operated by Prince George's County. "Written reports and records were made regarding the incident by various agents, servants and employees of the County employed at the hospital, including the hospital administrator, from their own investigation and the complaints of Sybel Loewinger," 266 Md. at 317, 292 A.2d at 68, and the plaintiff gave notice to an insurer who acknowledged to the plaintiff's attorney that it insured the County and also investigated the claim. *Id.* We held that was insufficient:

"This is not to say that any information at all, conveyed to anyone connected with the County, is sufficient. There must be substantial compliance in order to give the statute effect. Lacking here was any direct notice whatever to the County Commissioners or Council. That the hospital authorities knew about an accident and the liability carrier investigated the injury and received a communication from plaintiff's attorney informing it of his representation, is insufficient compliance with the statute."

*Id.* at 318, 292 A.2d at 68. See to like effect, *Williams v. Montgomery County,* in which, relying on *Loewinger,* the Court of Special Appeals rejected a substantial compliance argument where the notice was given to the claims administra-

tor for Montgomery County.   123 Md.App. at 130–31, 716 A.2d at 1105.

As indicated already, the purpose of the notice requirement under the LGTCA is to ensure that the local government is made aware of its possible liability at a time when it is able to conduct its own investigation and ascertain, for itself, from evidence and recollection that are fresh and undiminished by time, the character and extent of the injury and its responsibility for it.   That purpose was fulfilled in both these cases by providing notice to Trigon and cooperating with it as it investigated the circumstances of each case on behalf, and in the interest, of the County.

Montgomery County has established an elaborate claims administration system for the County.   Rather than in house, however, it is managed by a third party claims administrator, Trigon, under a contract solicited, and presumably executed, by the Montgomery County Government, Department of Finance, Division of Risk Management.   The Department of Finance is a department in the executive branch of County government, Montgomery County Charter, Article 2, § 214, and Risk Management, a division within that department. Thus, both are under the County Executive.

Under its contract, Trigon has responsibilities for achieving and maintaining the currency of the data it "uses and/or maintains" and the data in the Division of Risk Management's information system, in furtherance of the County's goal of having a fully automated and integrated risk management information system in house in the Division of Risk Management.   This task is to be accomplished either by Trigon's accessing the County's risk management information system or providing on-line access to the Division of Risk Management to its system.   If the former, Trigon is "responsible for maintaining the Risk Management Information System [RMIS] data, using the RMIS application, through direct on-line access to the County."   If the latter, its "system must be available to the County for real time file access" using the

County's equipment and it must train the County personnel in operating and accessing the system.

Trigon's responsibilities under its contract with the County are extensively reviewed and often in detail. It must create a file folder for each claim, date-stamp correspondence on the day received, maintain an orderly file folder, with direction as to what that means. More significantly, Trigon is contractually required to provide "continual telephone coverage, (24–hours–a–day, to include weekends and holidays), for the purpose of receiving incident reports and messages" and to be open at least when the County offices are open. It must contact claimants within one working day of notification of bodily injury and enter claim information on the computer data base within five days of receipt of the claim. Moreover, the results of each investigation is required to be in the file on a form developed for that purpose and stating the rationale for the adjustment decision. Each foldered file has to be reviewed every 45 days and documented, preferably on the computerized data management system, with the documentation to contain comments concerning the information received, the adjuster's file direction and disposition plans. For files with a combined reserve of $25,000.00 or more, a typed and captioned report must be completed and submitted to Risk Management within 60 days of the posting of the reserves.

In connection with Commercial General Liability claims, Trigon's responsibilities include recording, investigating, tabulating, adjusting, appraising, and, where appropriate, paying claims requiring defense or indemnification; cooperating with and assisting the County Attorney or other designated counsel in the defense of claims, notifying excess carriers of claims and negotiating settlements of those claims, and immediately notifying the Chief of the Division of Risk Management and the County Attorney of cases involving catastrophic injuries or damages. Trigon, in addition, is empowered to settle claims up to $2,500.00, using County funds. It must review with the County Attorney any claim over $2,500.00 for which settlement is contemplated, providing a detailed case synopsis, itemization of damages and settlement recommendations.

Although the County uses a third party, private company to act as its claims administrator, it is clear, given this contractual arrangement, its comprehensiveness and the degree of control that the County maintains, that actual notice to the County results when notice is given to Trigon. Indeed, the Mendelsons' case is instructive in this regard.

In that case, it will be recalled, Mrs. Mendelson called the Division of Risk Management the day after the accident and provided the information required to be furnished by § 5–304(b)(3) to K. Williams, who prepared a written telephone report. That report was transmitted to the Claims Management in the Division of Risk Management, who forwarded it to Trigon. Trigon assigned the claim a number and, subsequently, after receiving a call from Mrs. Mendelson, wrote to Mr. Mendelson. In the letter, the Senior Claim Representative for Trigon identified Trigon as the claims administrator for the Montgomery County Police Department and informed Mr. Mendelson that "[W]e have received formal notification of this incident."

The respondents rely on *Loewinger* and *Williams*, arguing, in effect, that notice to Trigon, and the Division of Risk Management in the case of the Mendelsons, like the notice to the insurer and the County Hospital in *Loewinger* and the claims administrator in *Williams*, is not a viable substitute for notice to the County Executive. They submit that there can be no substantial compliance with the LGTCA notice provisions by substituted service, that only the method of notice is affected—"it [does] not waive the requirement as to the person a claimant must serve." Under this rationale, rather than a shield, the notice provisions of the LGTCA become a sword, permitting the local government to have the full benefit of the early notice, but none of the risks. It also substantially undermines the substantial compliance doctrine in these cases.

In *Williams*, the Court of Special Appeals observed, "[i]f this were an issue of first impression, this contention [that there had been substantial compliance with the notice requirements] would, at a minimum, present a close question." 123

Md.App. at 130–31, 716 A.2d at 1105. As we have seen, it rejected the argument based on our decision in *Loewinger.* When we reviewed *Williams,* the issue of substantial compliance was not presented. See *Williams v. Maynard,* 359 Md. at 388 n. 7, 754 A.2d at 384. We commented on it, however, intimating that "a reexamination of the holding in *Loewinger* may well be appropriate." *Id.* That time has now arrived. *Loewinger* is hereby overruled.

We agree with the Amicus Maryland Trial Lawyers Association, "[s]ubstantial compliance turns on ensuring that the County [or local government] has sufficient actual notice to perform a proper and timely investigation" (amicus curiae brief in No. 121, at 30). Consequently, where the tort claimant provides the local government, through the unit or division with the responsibility for investigating tort claims against that local government, or the company with whom the local government or unit has contracted for that function, the information required by § 5–304(b)(3) to be supplied, who thus acquires actual knowledge within the statutory period, the tort claimant has substantially complied with the notice provisions of the LGTCA. This test is fair and has the advantage of taking account of the reality of how tort claims actually are handled.

As indicated, the Mendelsons contacted the Division of Risk Management directly, supplying the necessary information. Thus, the very division of County government responsible for the processing and handling of tort claims against the County acquired on the day after the accident actual knowledge of the accident and the claim and its basis. Moreover, within 8 days of the accident, the County's claims administrator, having already been apprised of the Mendelson claim by Risk Management, received notice from the Mendelsons, as well. The County, accordingly, was able at the earliest moment to conduct its investigation. The purpose of requiring notice was fulfilled.

The same result obtains with respect to the Moore claim. Within two or three days of the accident, he was contacted by

a representative of Trigon, with whom he discussed the accident. There is no contention that Moore did not give that representative the information required by § 5–304(b)(3). Given its relationship with Trigon and the extent of its control, here, too, the County received early actual knowledge of Moore's claim as to enable it, at the earliest moment, to investigate it.

## V.

As we have noted, the trial courts in both of these cases found that the petitioners did not show good cause to waive the notice requirement, that their interaction and correspondence with the County's third party claims administrator, and reliance thereon, was not sufficient to establish that they prosecuted their claims "with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Westfarm Assocs.*, 66 F.3d at 676–77. We do not agree and, in fact, hold that, in so holding, the courts abused their discretion.[16] On the contrary, we believe that an ordinarily prudent person under the circumstances of these cases, reasonably could, and would, rely on the representations of the County's claims administrator.

Relevant to determining the amount of diligence with which an "ordinarily prudent person" would prosecute his or her claim is the underlying purpose of the notice statute. We have stated that the purpose of the LGTCA is "to have the claimant furnish the municipal body with sufficient information to permit it to make an investigation in due time sufficient to

---

**16.** In *Williams v. Maynard,* supra, 359 Md. 379, 754 A.2d 379, we held that § 5–304(b) applies to an action brought against a local government pursuant to Maryland Code (1977, 1999 Repl.Vol.), § 17–107(c) of the Transportation Article. Although the facts of that case are strikingly similar to those of the instant cases, as noted, there we expressly did not consider the issue of whether notice given to a County's third party claims administrator permits waiver of the notice requirement. *See id.* at 387–88, 754 A.2d at 384 ("it should be emphasized what is not before us in this case. ... no issue was raised by Williams in this Court under subsection (c) of § 5–304 pertaining to waiver of the notice requirement for good cause").

ascertain the character and extent of the injury and its responsibility in connection with it." *Grubbs,* 267 Md. at 321, 297 A.2d at 756. When that purpose has been achieved, we have already held, substantial compliance with the statute is the result. The same acts and conduct that establishes that the purpose of the statute has been satisfied may also constitute a waiver of notice or create an estoppel. *See Delaware County v. Powell,* 272 Ind. 82, 393 N.E.2d 190 (1979). There, the issues were whether a claim of waiver of the notice requirement or estoppel, or a claim of substantial compliance with the notice requirement could be made where the plaintiff filed a notice of claim after the statutory period. *Id.* at 191. Reversing the judgment of the intermediate appellate court, the Supreme Court of Indiana opined:

> " . . . [I]t appears that acts or conduct of the defendant or his agent as well as acts of the plaintiff could establish that the purposes of the statute were satisfied, that is, that the city was advised of the accident and that it promptly investigated the surrounding circumstances to determine its possible liability and to prepare a defense. Other facts proving preparation of a defense or admissions of liability; letters or writings involving descriptions of the incident, causes and conditions thereof or the nature and extent of injuries; promises; payments; settlements or other conduct or acts of the defendant or his agents or of the plaintiff, could be offered to prove that the purposes of the statute have been satisfied. When the purposes of the statute are fully satisfied, it is clear that the result is substantial compliance with the statute. When acts and conduct of the defendant or his agents have established that the purposes of the statute have been satisfied, these acts and conduct could constitute a waiver of notice or create an estoppel."

*Id.* at 192. *See also Ferrer v. Jackson County Bd. of Supervisors,* 741 So.2d 216, 219 (Miss.1999) ("prolonged, continuous and extensive" communication between the plaintiff and the Board, including settlement offers made by the Board, substantially complied with the notice requirement and constituted waiver of notice and estoppel).

Moore was contacted by Trigon within a few days of the accident. He was informed that it was the third party claims administrator for Montgomery County, the employer of the bus operator, whom Moore believed responsible for the accident in which he was injured. Subsequently, Trigon communicated with Moore's attorney, reiterating its connection to the County and, further, informing him that it was "investigating the facts surrounding [the accident.]" The representation as to Trigon's status was repeated in later correspondence seeking additional information pertinent to the investigation and settlement, i.e. medical bills and reports, Moore's version of the accident, Moore's personal data and medical authorization. Thereafter, there were further correspondence and communications between Moore's attorney and Trigon.[17]

The Mendelsons initially communicated with the Division of Risk Management, a division of the Department of Finance. When the claim was transferred to Trigon, they and their attorney communicated with it. The initial correspondence from Trigon identified Trigon "as the claims administrator" for the Montgomery County Police, with whom the Mendelsons were involved in the accident they reported. It also informed Mr. Mendelson, "[w]e have received formal notification of this incident." Thereafter, moreover, the Mendelsons, through their attorney, maintained consistent contact with Trigon during the course of Mr. Mendelson's medical treatment, by corresponding with Trigon.

Neither of these cases is at all similar to those in which we, or other courts applying the Maryland Local Government Tort Claim law, have found good cause lacking. In those cases, the claimants either took no action to notify the local government defendant of potential claims or unreasonably relied upon notice provided to employees with neither actual nor apparent authority. In *Heron v. Strader, supra,* 361 Md. at 271, 761

---

17. Pursuant to its contract with Montgomery County, Trigon was required to initiate a claims file, investigate the claims, communicate with the claimants, adjust and appraise the claim and, where appropriate, pay the claim. We may assume, therefore, that Trigon unsuccessfully attempted to negotiate settlement.

A.2d at 63, for example, we held that a claimant's preoccupation with his own criminal defense did not constitute good cause for his failure to timely notify Prince Georges County of his claims for false arrest, and false imprisonment. There, apart from participating in his criminal defense, the claimant took no action whatsoever to make the county aware of its potential civil liability. Similarly, in *Madore v. Baltimore County, supra*, 34 Md.App. at 342–44, 367 A.2d at 56–57, the Court of Special Appeals held that a claimant's brief unconsciousness and extensive hospitalization due to injuries he alleged were the result of the county's negligent highway design did not constitute good cause for his failure to provide timely notice. Upholding the trial court's dismissal of the claimant's civil action, the intermediate appellate court emphasized that, despite his health concerns, the claimant could have contacted a lawyer earlier.

In *Bibum v. Prince George's County*, 85 F.Supp.2d 557 (D.Md.2000), the federal District Court held that the claimant's mere ignorance of the notice requirement did not constitute good cause to excuse his untimely filing of assault and battery claims stemming from his arrest by a county police officer. The claimant filed a complaint at the police station regarding the officer's conduct; however, he took no further action to inform the county of his alleged injuries. The court rejected his argument that his reliance on this complaint constituted good cause for his failure to file a notice of claim, finding that "[a]n ordinarily prudent person in a similar situation would have made his own investigation into the existence of any formal notice requirements or consulted an attorney on the matter." *Id.* at 565.[18]

There being no issue of prejudice to the respondents, the respondents claiming none and the trial courts having already determined that the respondents are not prejudiced by the

---

**18.** The claimant waited over ten months to consult an attorney regarding a suit against the officer and the county despite his awareness, evidenced from the complaint he filed, that he had a basis for filing civil claims. *Bibum*, 85 F.Supp.2d at 565, n. 7.

waiver, we conclude that it was an abuse of discretion for the trial courts not to entertain the petitioners' suits. The purpose of § 5–304(c) is, after all, to allow the court to achieve "substantial justice under varying circumstances." *Madore*, 34 Md.App. at 344, 367 A.2d at 57.

*JUDGMENTS OF THE CIRCUIT COURT FOR MONT- GOMERY COUNTY REVERSED; BOTH CASES RE- MANDED TO THAT COURT FOR FURTHER PROCEED- INGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY THE RESPONDENTS.*

Dissenting Opinion by CATHELL, J.

I respectfully dissent. The majority states:

"We agree with the Amicus American Trial Lawyers Association, '[s]ubstantial compliance turns on ensuring that the County [or local government] has sufficient actual notice to perform a proper and timely investigation.' Consequent- ly, where the tort claimant provides the local government, through the unit or division with the responsibility for investigating tort claims against that local government, or the company with whom the local government or unit has contracted for that function, the information required by Section 5–304(b)(3) to be supplied, who thus acquires actual knowledge within the statutory period, the tort claimant has substantially complied with the notice provisions of the LGTCA. This test is fair and has the advantage of taking account of the reality of how tort claims actually are han- dled." [1]

The majority, in my view, is rewriting the statute to suit its purposes. The Legislature has predetermined the entities to whom notice must be given. It could easily have, but did not, include private (or public) claim administration entities. Nor

---

1. *In reality* that is only one way in which tort claims against local governments can be handled. In some jurisdictions it is not unusual for tort claims not to be processed until, and if, proper notice is given. In those jurisdictions the giving of proper notice is what activates the process.

did it designate adjusters for insurance companies that may offer liability insurance to local governmental entities, although, with the Court's decision today, this Court will be hard pressed to make distinctions.

The persons who proffer legal advice to entities such as Montgomery County are, and have consistently been, acutely aware of the notice provisions of the LGTCA and rely to a great extent on the protections the Legislature has devised in the statute for local governments. The Court dictated erosions of the statutory protections offered by the notice provisions of the LGTCA has been a consistent area of concern for local governments.

With the Court's decision in this case, the Court is sending a message to local governments that their good faith efforts to become more efficient in claim administration, and thus more answerable to claimants, may well result in the loss of one of the most important protections afforded by the LGTCA. The result may well be, especially in the smaller local governments, a movement away from establishing formal claim administration departments, public or privately contracted.

It is beyond question that local governments have relied on the protections of the notice provision of the statute. On personal knowledge, I am aware that the first thing any competent attorney for local governments does, when he is made aware of a claim being made, or a suit being filed, is to review it for whether proper notice was given in a timely fashion to the proper authorities as specified in the LGTCA. The purpose of the requirement is to insure that the persons on whom the ultimate decisions rest, receive direct notice in time to undertake any investigation **they** deem necessary. While in the present case, Montgomery County has created an extensive process involving a private entity (whom the majority states can receive notice under the Act), virtually every local government has some person, or entity, that claimants can now argue notice can be given to. A person who is injured in rough surf at Ocean City can now argue that the city received notice when the life guards, and the Beach Patrol

Captain, became aware of the incident, because one of the general duties of the Beach Patrol Captain is to investigate drownings and other beach related incidents. A person who is injured in an accident with a city vehicle can claim that notice was given to the local government because it has in place a procedure whereby certain Police Department officers are required to investigate any accident involving a city vehicle. With this latest step in the erosion of the protections afforded to local governments under the LGTCA, the best way, perhaps the only way, for local governments to guarantee that they receive the protections to which they are entitled, is to adopt an "ostrich" [2] procedure until such time as proper notice is received or the 180 days has passed.

The decision of the majority in this case (as well as some others that have preceded it), in my view, nullifies the notice provisions of the statute anytime a local government desires to adopt an efficient method of administering tort claims against it. Accordingly, I dissent.

---

**2.** Adopt procedures that mandate that no one takes any action in respect to determining anything about any claims until proper notice is timely received by the proper persons. In other words, to the extent that established procedures, whether administered by public or private entities, are in place, that they not be activated until appropriate notice is received, or even be abolished altogether in favor of a practice whereby those persons whom the LGTCA requires to be notified, upon receipt of such notice then in turn notify the local government's legal office. That office could then make a determination as to whether the LGTCA's notice requirements have been met, and, if met, forward the claim to a claims administration office, and if the notice requirements have not been met, notify the claimant that the claim is not viable because of the defect in the giving of notice. Such a practice may well be inefficient, and in the long run operate to the disadvantage of numerous claimants, but, with the Court's decision today such changes, in the absence of Legislative action addressing the Court's decision, may be necessary if local governments are desirous of keeping the protections the Legislature has determined are appropriate.